# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-43029 (MER) |
| Tiger Oak Media, Incorporated | Chapter 11 |
| Debtor. | |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S AMENDED MOTION FOR APPROVAL OF POST-PETITION DEBTOR-IN-POSSESSION SECURED CREDIT

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Tiger Oak Media, Inc. (the "Debtor"), by its undersigned counsel, submits this Limited Objection and Reservation of Rights (the "Objection") to the Debtor's Amended Motion for Approval of Post-Petition Debtor-in-Possession Secured Credit (the "Amended Motion") [ECF #61]. The Objection is based on the matters set forth herein, the files and the records in this case, and such other and further evidence as may be submitted in this matter. The Committee reserves the right to further supplement this objection and to raise additional objections at or before the hearing on this matter.

In further support of its Objection, the Committee respectfully represents as follows:

### RELEVANT BACKGROUND

1. On October 7, 2019, the Debtor filed its voluntary petition seeking relief under the Bankruptcy Code (the "Petition Date").

2. On October 23, the Debtor filed its initial Expedited Motion for Approval of Post-Petition Debtor-in-Possession Secured Credit [ECF #24] (the "Initial DIP Motion"), whereby it sought relief similar to the relief sought in the Amended Motion currently before the Court. As

part of the Initial DIP Motion, the Debtor sought to have the largest unsecured creditor in the case, D&J Printing, Inc. d/b/a Hess Print Solutions ("Hess"), agree to provide essential printing services to the Debtor in exchange for a second-priority lien on all assets of the Debtor pursuant to 11 U.S.C. § 364(d) (the "Agreement").

3. The Debtor and Hess had not reduced the terms of the Agreement to a writing, other than as set forth in the motion and on the record at the hearing, as follows: "Hess … will supply 30-day credit terms to the Debtor if it is granted a lien on the assets of the Debtor and the Debtor-in-Possession … The Debtor's proposal is to make weekly payments to Hess so that jobs performed by Hess will be paid by the expiration of the 30-day terms provided to the Debtor." [*See* ECF #24 at ¶ 6.]

4. The U.S. Trustee objected to the motion on the grounds that, at the time, schedules had not been filed; that the material terms of the Agreement did not include any recitation regarding interest rate, maturity, events of default, borrowing limits, or borrowing conditions; and that the Agreement did not clarify the extent of the proposed liens, or the extent of the required credit. [*See* ECF #25 at ¶¶ 2-4.[1]]

5. The Debtor and the U.S. Trustee were able to partially resolve the objection on the record at the hearing held on October 25, 2019, and, subsequently, the Court entered the first interim order approving the Agreement (the "First Interim DIP Order"), and set the matter on for final hearing on November 20, 2019. [*See* ECF #26.]

6. Thereafter, the Debtor and the Committee, through counsel, began to negotiate the Initial DIP Motion and the Interim DIP Order, but on or about November 19, 2019, reached an

---

[1] Notably, the Committee had been appointed the day before the Initial DIP Motion was filed, and had not yet retained counsel by that time. [*See* ECF #23.]

impasse regarding the scope of a proposed final DIP order because the Initial DIP Motion did not contain projections past the end of 2019.

7. Additionally, Hess obtained counsel, and sought changes to the proposed final order – necessitating a continuance of the final hearing scheduled for November 20, 2019.[2]

8. It then came to the attention of the Committee that Hess was not only seeking a second lien on the Debtor's assets pursuant to the Agreement, but would also seek a superpriority administrative expense claim pursuant to 11 U.S.C. § 364(c)(1).

9. The Debtor submitted an agreed Second Interim DIP Order to the Court – via chambers – on November 20, 2019, which was entered by the Court on November 21, 2019. [*See* ECF #57.]

10. On November 25, 2019, the Debtor noticed a new hearing for December 5, 2019, and filed its Amended Motion [ECF #61], again on an expedited basis, which contained the request for superpriority status, and permitted objections up to two hours prior to the time of the hearing. Thus, the Committee's objection is timely.

## **OBJECTION**

The Committee objects to the Amended Motion because the terms of the Agreement are still unclear. Further, there is no proposal to provide parties in interest with the ability to review the progress of the performance under the Agreement, which, based on its extraordinary nature, has potentially unsettling consequences for the unsecured creditors.

---

[2] The Committee also asserts that the Debtor has failed to set forth the reason the Amended Motion, seeking new and additional relief, needed to be set on for an expedited hearing as the Second Interim Order is in effect until the time set for the final hearing.

Accordingly, the Court should sustain the Committee's objection for the reasons enumerated below and approve the Amended Motion on the terms suggested by the Committee herein, and on an interim basis only.

**I.    THE TERMS OF THE AGREEMENT ARE STILL UNCLEAR WITH RESPECT TO MULTIPLE MATERIAL TERMS.**

11.    First, though the Debtor and Hess have had more than 30 days since the Initial DIP Motion was filed, they have not yet reduced any part of their agreement to a writing containing any material terms.  Notwithstanding the fact that Minn. Stat. § 513.33 requires any credit agreement to be in writing, there is no way for any party in interest to understand numerous items on which the performance of the Agreement could depend, including, without limitation, what will cause a default under the agreement, whether there is a cure period in the event of a payment default, whether the lien will attach to the Debtor's receivables in the event the printing process produces either late or substandard goods, what remedies the Debtor will have against Hess in the event of such an occurrence, whether Hess is receiving more favorable terms with respect to historical printing services than it was prepetition, etc.  Without this information, it is impossible for parties in interest to evaluate the ultimate benefit of this Agreement on the creditor body – aside from the obvious goal of permitting the Debtor to continue to operate.

**II.   THE COMMITTEE SHOULD BE PERMITTED TO RECEIVE PROGRESS REPORTS REGARDING THE EFFECTIVENESS OF THE AGREEMENT AND THE DEBTOR'S PERFORMANCE THEREUNDER.**

12.    Second, the lien proposed by the Debtor has the potential to greatly reduce any ultimate recovery to the unsecured creditors in the case, without providing the Committee (or the Court) any oversight or reporting regarding the status of performance under the Agreement.  For example, if the Committee was required measure the status of payments under the Agreement only by reference to the monthly operating reports, there would be approximately seven to eight weeks

between the beginning of a given month and the reporting date on the 21st of the subsequent month. During that period, Hess could advance hundreds of thousands of dollars to the Debtor, which could greatly reduce the currently scheduled value of the Debtor's assets to the potential detriment of the unsecured creditors with respect to any ultimate distribution.

13. The Committee understands that if the Debtor is, in fact, unable to obtain any other sort of financing, the unsecured creditors may face even more dire straits should the Debtor be unable to produce its primary business product. Nonetheless, the Committee asserts that the Debtor and Hess should be required to prepare a weekly report (the "Report") and provide the same to the Committee (through its attorney, via email), by 5:00 p.m. prevailing central time on Friday of each week (the "Reporting Date"), indicating 1) the titles of the publications and number of units as to which printing services will actually be performed by Hess in all subsequent weeks, if any; 2) the amount of credit extended during the previous week, if any; 3) the amount paid to Hess during the previous week, if any; 4) the total cumulative amount of credit extended to Hess at the end of such previous week, if any; and 5) the total cumulative amount outstanding at the end of such previous week, if any.

14. Further, the Committee asserts that if the Report is not timely provided to the Committee by the Reporting Date, Hess's security interest in the Debtor's assets should not attach thereto with respect to any value advanced during the period subsequent to the Reporting Date, until such time as the Report has been provided to the Committee as set forth herein, and the Committee acknowledges, in writing, to the Debtor and Hess, through counsel, that the Report meets the standards set forth herein with respect to the same.

**III.   ANY APPROVED AGREEMENT SHOULD PERMIT THE DEBTOR TO CURE A DEFAULT – EVEN IF THE CURE PERIOD IS SHORT.**

15.   Third, the Agreement appears to provide Hess with complete discretion to shut-off its production on a whim, without any cure provision. Because of the extraordinary relief it is seeking, and the essential nature of the service it is providing (not to mention the sizeable impact Hess's actions could have on the unsecured creditors in this case), while also realizing the risk Hess is taking, the Committee assets that a short, but reasonable cure period of 3 business days should be set forth in any order approving the Agreement. Further, the Committee and the Debtor should also be provided notice, in writing, of any default under the Agreement.

**IV.   THE COURT SHOULD APPROVE THE AGREEMENT ON A CONTINUED INTERIM BASIS FOR A SIXTY-DAY PERIOD AND REQUIRE THE REPORTING SUGGESTED BY THE COMMITTEE**

16.   The Committee recognizes the importance of the relief sought by the Debtor and Hess, but believes that additional measures should be taken to be certain that the Agreement is in the best interest of the creditors. Accordingly, the Committee suggests that the Court enter another interim order, permitting Hess to advance under the articulated terms in the Amended Motion for a period of sixty days, while providing the reporting requested by the Committee with respect to the Debtor's performance thereunder.

**CONCLUSION**

17.   The Committee respectfully requests the Court sustain its Objection and deny the Amended Motion on a final basis, until the Debtor and Hess commit to providing more specific material terms of the Agreement and to provide additional reporting to permit the Committee the ability to understand the effect of the Agreement on the unsecured creditors.

## RESERVATION OF RIGHTS

18. The Committee hereby expressly reserves all of its rights with respect to the Amended Motion, including the right to supplement this Objection and to raise additional objections before or at the hearing on the Amended Motion, and joins in any objections of other parties in interest to the extent not inconsistent herewith.

Respectfully submitted,

**BASSFORD REMELE**
*A Professional Association*

Dated: December 4, 2019      By: */e/ Jeffrey D. Klobucar*
Jeffrey D. Klobucar (#0389368)
Patrick D. Newman (#395864)
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402
jklobucar@bassford.com
pnewman@bassford.com
Telephone: (612) 333-3000
Facsimile: (612) 333-8829

*Counsel for the Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-43029 (MER) |
| Tiger Oak Media, Incorporated | Chapter 11 |
| Debtor. | |

## VERIFICATION

I, Juan Mostek, chair of the Official Committee of Unsecured Creditors of Tiger Oak Media, Inc., declare, under penalty of perjury, that the factual components of the foregoing Objection are true and correct to the best of my information, knowledge, and belief.

Dated: December 4, 2019

By: _____
Juan Mostek
Committee Chair

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-43029 (MER) |
| Tiger Oak Media, Incorporated | Chapter 11 |
| Debtor. | |

## DECLARATION FOR PROOF OF SERVICE

I, Jeffrey D. Klobucar, an attorney licensed to practice law in this Court, with an office address of 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, declare that on December 4, 2019, I caused the following documents:

- **LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S AMENDED MOTION FOR APPROVAL OF POST-PETITION DEBTOR-IN-POSSESSION SECURED CREDIT,**

to be served and filed electronically with the Clerk of the Bankruptcy Court through ECF, and that the Bankruptcy Court, via ECF, will send an electronic notice of the filing to all parties registered to receive electronic service, which includes the parties required to receive service under Local Rule 9013-3(b).

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  December 4, 2019                    By: /e/ Jeffrey D. Klobucar
                                                Jeffrey D. Klobucar (MN #0389368)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-43029 (MER) |
| Tiger Oak Media, Incorporated | Chapter 11 |
| Debtor. | |

**THIRD INTERIM ORDER APPROVING POST-PETITION SECURED CREDIT**

This matter came before the court on the Debtor's Motion for Approval of Post-Petition Secured Credit (the "Motion") and the Committee's Limited Objection to the same. The Motion was originally scheduled for a final hearing on Wednesday November 20, 2019 but was continued to December 5, 2019 as a result of an amended expedited motion filed by the Debtor (the "Amended Motion"), seeking additional expedited relief under 11 U.S.C. § 364. The Court previously entered two interim Orders approving similar relief on October 25, 2019 [ECF #26], and November 23, 2019 [ECF #60], respectively. Based upon the files and records herein,

**IT IS HEREBY ORDERED:**

1. The Committee's Objection is **SUSTAINED**;

2. The secured credit agreement (the "Agreement") entered into by and between the Debtor and D&J Printing, Inc. d/b/a Hess Print Solutions ("Hess") is hereby approved, on an interim basis, according to the following terms: 1) Hess will provide printing services after the date of this Order to the Debtor on 30-day credit terms, from time to time; 2) the Debtor shall make weekly payments to Hess in an amount not less than 25% of the value of the printing services advanced for such prior 30-day period; 3) the Debtor is authorized to schedule print production for its numerous publications pursuant to the Agreement; 4) Hess is hereby granted a lien and security interest in all assets of the Debtor which shall secure the value advanced or credit extended to the

Debtor, which lien shall be junior in all respects to all liens and security interests held by Choice Financial Group d/b/a/ Choice Bank ("Choice") in all of the Debtor's assets. Further, Hess's lien or security interest shall not attach to or otherwise encumber the Debtor's chapter 5 causes of action, any other litigation claims the Debtor or its estate may have, or any of the proceeds of the same.

3. This Order shall be effective for sixty (60) days, at which time any party in interest, including, but not limited to, the Debtor, Hess, Choice, or the Official Committee of Unsecured Creditors (the "Committee"), may seek review of this Order based on the performance of the parties to the Agreement.

4. The Debtor is hereby authorized and directed to enter into and perform all of its obligations under the Agreement, the provisions of which are hereby approved, incorporated herein by reference, and made a part of this Order.

5. The Debtor is hereby authorized to enter into and execute any other document deemed necessary or appropriate by Hess to give effect to the terms and provisions of this Order and the Agreement.

6. Hess has represented to this Court that it will not provide unsecured credit to the Debtor in exchange for an administrative expense claim.

7. The Debtor has represented to this Court that it has attempted to obtain secured and unsecured credit from other entities and sources, but was unable to find any entity willing to advance credit under any terms other than those to which Hess agreed.

8. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the advances and extensions of credit and any other indebtedness which from time to time hereafter is owing by the Debtor to Hess pursuant to the Agreement and remaining unpaid shall constitute an allowed superpriority administrative expense claim against the Debtor (without the need to file any proof of claim) with priority over any and all claims against the Debtors, now existing or hereafter

4

arising.

9. Nothing herein shall obligate Hess to perform any services or otherwise extend credit to the Debtor, and any such services or extensions of credit shall be performed or made solely in Hess's discretion, except that if the Debtor shall fail to make a timely payment as set forth under the Agreement and in this Order, the Debtor shall have three (3) business days after notice of the failure to make payment provided in writing to both the Debtor (through its attorney) and the Committee (through its attorney) via email, to cure such default.

10. Hess and the Debtor shall prepare a weekly report (the "Report") and provide the same to the Committee (through its attorney via email), by 5:00 p.m. central time on Friday of each week (the "Reporting Date"), indicating the titles of the publications and number of units as to which printing services will be performed by Hess in all subsequent weeks, if any; the amount of credit extended during the previous week, if any; the amount paid to Hess during the previous week, if any; the total cumulative amount of credit extended to Hess at the end of such previous week, if any; and the total cumulative amount outstanding at the end of such previous week, if any.

11. If the Report is not timely Provided to the Committee by the Reporting Date, Hess's security interest in the Debtor's assets shall not attach with respect to any value advanced during the period subsequent to the Reporting Date, until such time as the Report has been provided to the Committee as set forth herein, and the Committee acknowledges, in writing, to the Debtor and Hess, through counsel, in writing, that the Report meets the standards set forth herein with respect to the same.

12. Hess and the Debtor shall also provide to the Committee, within seven (7) days of the entry of this Order, a document sufficient to demonstrate the prepetition pricing charged by Hess to the Debtor for printing services with respect to any titles as to which Hess will also provide (or has also provided) printing services post petition.

13. Hess is a "good-faith" lender, and the credit extended by Hess pursuant to this Order

5

shall be deemed to be extended in good faith within the meaning of §364(e) of the Bankruptcy Code and Hess is entitled to the protections afforded by §364(e) of the Bankruptcy Code.

14. To the extent permitted by applicable law, the provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting any Debtor's Chapter 11 case to a Chapter 7 case, (b) confirming or consummating any plan(s) of reorganization of the Debtor or (c) dismissing the Debtor's Chapter 11 case or any subsequent Chapter 7 case pursuant to §§ 303, 305, or 1112 of the Bankruptcy Code, and the terms and provisions of this Order, as well as the priorities granted pursuant to this Order and the Agreement shall continue in this or any subsequent case under the Bankruptcy Code.

15. Except as otherwise stated herein, the provisions of this Order shall be binding upon all persons and shall inure to the benefit of Hess, the Debtor, and their respective successors and assigns.

16. Entry of this Order is without prejudice to any other rights that Hess, the Debtor, or any other party in interest may have, at law or in equity, including, but not limited to, the right to seek further, other, or different relief under the Bankruptcy Code.

17. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

18. This Order is effective immediately upon its entry.

Dated: _____ _____

Michael E. Ridgway
United States Bankruptcy Judge