## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**In Re:**

**BKY No.:  19-43029**
**Chapter 11 Case**

**Tiger Oak Media, Incorporated,**

**Debtor.**

---

### NOTICE OF HEARING AND MOTION AUTHORIZING
### REJECTION OF EXECUTORY CONTRACT

---

**TO:    THE DEBTOR, THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN
INTEREST AS SPECIFIED IN LOCAL RULE 9013.3.**

1.    Tiger Oak Media, Incorporated (hereinafter "Debtor"), the above-named Debtor-In-Possession, by and through its counsel, moves the Court for the relief requested below and gives notice of hearing.

2.    The Court will hold a hearing on the Debtor's motion at 2:00 p.m. on Thursday, January 16, 2020, in Courtroom No. 7 West, United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, before the Honorable Michael E. Ridgway, or as soon thereafter as counsel can be heard.

3.    Any response to the motion shall be filed and served not later than Friday, January 10, 2020 which is five (5) days before the hearing date.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This is a core proceeding. The case is now pending in this Court, having been filed on October 7, 2019.

–1–

5.      This motion arises under 11 U.S.C. §365.  This motion arises under Bankruptcy Rules 4001, 6006 and 9014 and Local Rule 9013-1.  In its motion, the Debtor seeks an Order authorizing it to reject, as an executory contract, the Event Sales Agreement ("Contract") (attached as **Exhibit A**) between the Debtor, a/k/a Seattle Business Magazine ("Group") and Hyatt Corporation, as agent of HT-Seattle Owner, LLC, a Delaware limited liability company, d/b/a Hyatt Regency Seattle ("Hotel").  The Contract is for reserving space at the Hotel for an Event titled "100 BEST COMPANIES TO WORK FOR 2020" on June 17, 2020.  The Debtor wishes to reject this Contract.

6.      The Debtor believes that it is in the best interest of the Debtor, its estate and the Debtor's creditors that it be permitted to reject the Agreement between its Affiliate and the Hotel.  The Debtor alleges that it has utilized sound business judgment in determining to reject the Agreement.

7.      The Debtor still intends to move forward with the event.  It has located alternate space at the Seattle Convention Center.  Changing locations for the event, together with certain other price reductions, will result in a savings to the Debtor and the estate in a sum in excess of $40,000.00.

8.      The Debtor reserves the right to call Craig Bednar to testify in support of this Motion.

**WHEREFORE**, the Debtor requests an Order of the Court authorizing the Debtor to reject the executory contract between its Affiliate, Seattle Business Magazine and Hyatt Corporation, as agent of HT-Seattle Owner, LLC, a Delaware limited liability company, d/b/a Hyatt Regency Seattle.

**STEVEN B. NOSEK, P.A.**

Date: December 19, 2019.                    /e/ Steven B. Nosek
Steven B. Nosek, #79960
Yvonne R. Doose, #397066
2855 Anthony Lane South, Suite 201
St. Anthony, MN 55418
(612) 335-9171
**ATTORNEYS FOR DEBTOR**
snosek@noseklawfirm.com
ydoose@noseklawfirm.com

–3–

## VERIFICATION

I, Craig Bednar, CEO of the Debtor named in the foregoing pleading, declare under penalty of perjury that the foregoing pleading is true and correct according to the best of my knowledge, information and belief.

**TIGER OAK MEDIA, INCORPORATED**

Dated: _12-19_, 2019.

_____

Craig Bednar, CEO



HYATT REGENCY SEATTLE
808 HOWELL STREET
SEATTLE, WA, 98101, US
T: (206) 973-1234
F: (206) 859-6519

# EVENT SALES AGREEMENT

| | |
|---|---|
| Date Prepared: | September 26, 2019 |
| Group Contact: | Tanya  Norton |
| Title: | Marketing & Events Manager |
| Organization: | Seattle Business Magazine |
| Address: | 1417 4TH AVE STE 600<br>SEATTLE WA<br>98101-2233 |

| Telephone: | 206-452-2971 | Fax: | | Email: | tanya.norton@tigeroak.com |
|---|---|---|---|---|---|

| | |
|---|---|
| Event Name: | 100 BEST COMPANIES TO WORK FOR 2020 |
| Official Event Dates: | 17-Jun-2020/17-Jun-2020 |
| Hotel Sales Manager: | Katelyn  Buch |
| Title: | Event Sales Manager |

| Telephone: | (206) 859-6538 | Fax: | (206) 859-6519 | Email: | katelyn.buch@hyatt.com |
|---|---|---|---|---|---|

Seattle Business Magazine ("Group") and Hyatt Corporation, as agent of HT-Seattle Owner, LLC, a Delaware limited liability company, d/b/a HYATT REGENCY SEATTLE ("Hotel") agree as follows:

**GROUP'S FIRST OPTION DUE DATE**
Hotel agrees to hold the meeting and event space listed in this Event Sales Agreement (the "Agreement") for the Event named above on a tentative basis until 27 Sep 2019.  If this Agreement is not fully executed by Group and returned to Hotel, together with any required deposit, credit application or other materials, by 27 Sep 2019, Hotel may release the meeting and event space.

**MEETING AND EVENT SPACE COMMITMENT**
Group's program of events must be signed and initialed by Group and returned to Hotel with this signed Agreement (the "Program of Events").  Hotel will hold the meeting and event space as set forth on the signed and initialed Program of Events, which shall be attached to and made a part of this Agreement.  This is considered to be a firm commitment by Group and any increase or decrease to that commitment or Group's Food and Beverage Revenue Commitment (as defined below) may result in a modification of Group's Meeting and Event Space Rental Fee (as defined below), if any, by Hotel. All meeting and event space is assigned by Hotel according to the number of persons guaranteed to attend the Event. Hotel may reassign the meeting or event space listed on the Program of Events at Hotel's sole discretion.  Failure to submit a finalized Program of Events to Hotel by 27 Sep 2019 may result in a release or reassignment by Hotel of the meeting or event space being held for Group. Group agrees to promptly notify Hotel of any changes in its meeting or event space requirements.

Meeting and event space rental for this Event is WAIVED (the "Meeting and Event Space Rental Fee"). The Meeting Event Space Rental Fee is subject to taxes and service charges in effect at the time of the Event.  The current tax rate for meeting rooms is 10.100% and the service charge is 25.000%, of which 16.500% is allocated to service personnel who provide services for the Event as a gratuity and 8.500% is retained (and not distributed as a tip or other gratuity) by Hotel.

EXHIBIT A    1

**FOOD AND BEVERAGE REVENUE COMMITMENT**

By entering into this Agreement, Group agrees to provide a minimum of $70,000.00 in meeting and event food and beverage revenue (the "Food and Beverage Revenue Commitment"). The Food and Beverage Revenue Commitment excludes services charges, taxes, audio visual, parking or other associated expenses applicable at the time of the Event.

Should Group's actual meeting and event food and beverage revenue fall below the Food and Beverage Revenue Commitment based on the number of Event attendees, Hotel will advise Group of additional alternatives in food and beverage which will meet the Food and Beverage Revenue Commitment. If Group nonetheless does not reach the Food and Beverage Revenue Commitment, any outstanding balance will be charged to Group's Meeting and Event Space Rental Fee.

In order for the Hotel to prepare appropriately for food and beverage events, Group agrees to provide menu choices and number of attendees at least fourteen (14) days prior to the first day of the Event. A surcharge of up to five percent (5%) will be assessed for menu changes that are received less than fourteen (14) days prior to the first day of the Event. Group agrees to provide the guaranteed number of attendees at least three (3) days prior to the first day of the Event. This number will be considered a guarantee, not subject to reduction, and charges will be made accordingly.

All banquet food and beverage arrangements must be made through Hotel. Only food and beverage purchased from Hotel may be served on Hotel property. Hotel reserves the right to cease service of alcoholic beverages in the event that persons under the age limit mandated by applicable law are present at the Event and attempt to receive service of alcoholic beverages. Hotel reserves the right to deny alcoholic beverage service to guests who appear to be intoxicated.

Hotel and Group intend to liquidate the damages suffered by Hotel in the event that Group fails to meet its Food and Beverage Revenue Commitment set forth in this Section. Therefore, Hotel and Group agree that: (a) the damages suffered by Hotel in the event that the Food and Beverage Commitment is not met are difficult to calculate; (b) the above formula is a reasonable estimate of such damages; and (c) the Attrition Charges do not constitute a penalty.

Group's obligations under this Section shall survive completion of this Agreement.

**SERVICE CHARGES–FOOD AND BEVERAGE**

A service charge and applicable taxes that are in effect at the time of the Event shall be added to all food and beverage charges. The current service charge is 25.00%, of which 17.10% is allocated to service personnel who provide services for the Event as a gratuity and 7.9% is retained (and not distributed as a tip or other gratuity) by Hotel. Service charges may be subject to sales or other taxes in effect at the time of the Event. Group and its attendees may provide an additional tip to Hotel's staff. All service charges will be posted to Group's Master Account.

**BILLING ARRANGEMENTS**

Group shall be responsible for the Meeting and Event Space Rental Fee, food and beverage charges and other services requested by Group, in addition to applicable taxes and fees. These charges will be direct billed to the Master Account only if credit approval is granted in accordance with Hotel's credit approval process. Group appoints **Tanya Norton** to review and approve all charges billed to the Master Account.

Credit procedures will be provided to Group by Hotel upon the request for a credit application.
If Group wishes to set up direct billing for the Master Account, a credit application must be completed and returned to Hotel for approval together with this signed Agreement. In the event credit is approved: (i) all charges (up to the authorized credit amount) shall be due and payable to Hotel no later than thirty (30) days after Group's receipt of the Master Account invoice; and (ii) Hotel reserves the right to rescind its approval if there is a material change in Group's creditworthiness or material increase in anticipated charges.

In the event that credit is not requested, not approved or subsequently rescinded, payment of Group's total estimated Master Account will be due to Hotel prior to Group's arrival in accordance with the deposit schedule below. Failure to remit such payment(s) when due will be deemed to be a cancellation of this Agreement by Group, and Group shall be liable for the Cancellation Charges as set forth herein.
Invoice disputes and/or billing errors must be communicated to Hotel no later than fourteen (14) days before the date payment is due.

EXHIBIT A    2

**DEPOSITS**

Group shall provide a non-refundable (except as specifically provided herein) deposit in the total amount of $17,500.00 payable as set forth in the table below. All deposits will be credited towards Cancellation Charges (defined below) due to Hotel. Payment may be made by check, credit card, wire transfer or ACH. Hotel will provide a Credit Card Authorization form for scheduled payments made by credit card or ACH.

Group shall also provide a contingency deposit for additional items or services requested and provided during the Event, equal to 20% of the Food and Beverage Revenue Commitment ("Contingency Deposit"), due on same date as the final 4/4 deposit below. The Contingency Deposit will be credited toward any additional amounts charged for additional items or services requested and provided during the Event, and, if applicable, any other outstanding amounts owed by Group to Hotel. Any portion of the Contingency Deposit remaining after payment of such additional items and outstanding amounts will be refunded to Group.

| Payment type | Description | Due date | Due amount |
|---|---|---|---|
| Deposit | Deposit 1 | 1-Dec-2019 | 17500.00 |
| Deposit | Deposit 2 | 1-Feb-2019 | 17500.00 |
| Deposit | Deposit 3 | 1-Apr-2020 | 17500.00 |
| Deposit | Deposit 4 | 1-June-2020 | 17500.00 |

**CANCELLATION OPTION**

Either Hotel or Group may cancel this Agreement without cause upon written notice to the other party at any time prior to the Event. In the event Group cancels without cause, Group shall pay Hotel liquidated damages in an amount calculated according to the table below (the "Cancellation Charges"), plus applicable taxes. Applicable Services Charges will be added to the Cancellation Charges when cancellation occurs sixty (60) days or less prior to the first date of the Event.

| | |
|---|---|
| From 59 days prior to the Event, 4/19/2020, through the first day of the Event | $56,000.00 (80% of Food and Beverage Revenue Commitment) |
| From 179 days prior to the Event, 12/21/2019, through 60 days prior to the Event, 4/18/2020 | $49,000.00 (70% of Food and Beverage Revenue Commitment) |
| From 364 days prior to the Event, 6/19/2019, through 180 days prior to the first day of the Event, 12/20/2019 | $35,000.00 (50% of Food and Beverage Revenue Commitment) |

Payment of the Cancellation Charges shall be made by Group to Hotel at the time this Agreement is canceled by written notice. Hotel and Group agree that: (a) the damages suffered by Hotel in the event that Group cancels without cause are difficult to calculate; (b) the above formula is a reasonable estimate of such damages; and (c) the Cancellation Charges do not constitute a penalty.

In the event Hotel cancels this Agreement without cause, Hotel shall pay Group any direct damages suffered as a result of the cancellation, which damages shall not exceed the amount calculated according to the above scale.

The parties' obligations under this Section shall survive termination of this Agreement.

**CONCESSIONS**
- Complimentary meeting space as long as F&B minimum is actualized
- Dedicated Captain and Event Service Manager at the event
- World of Hyatt Points earned per eligible dollar spent (50,000 max)
- $15 Discounted Event Self-Parking & $20 Discounted Event Valet Parking

EXHIBIT A    3

**RIGHTS OF TERMINATION FOR CAUSE**

This Agreement may be terminated by either party without liability upon written notice under the following circumstances:

> (i)      if a party's performance under this Agreement is subject to acts of God, war, government regulation, terrorism, disaster, strikes, civil disorder, curtailment of transportation facilities, or any other emergency of a comparable nature beyond the party's control that in each case make it illegal or impossible to perform its obligations under this Agreement.  In such event, the terminating party shall give written notice of termination to the other party within five (5) days of such occurrence; or

> (ii)      if either party makes a voluntary or involuntary assignment for the benefit of creditors or enters into bankruptcy proceedings prior to the date of the Event.  In such event, the party who is not making an assignment or entering into bankruptcy proceedings shall have the right to terminate this Agreement upon written notice to the other party; or

> (iii)      if at the time of the Event, the hotel will no longer be operated under a Hyatt brand.  In such event, Hotel shall notify Group in writing of such change, and Group shall have the right to terminate this Agreement without liability upon written notice to Hotel within thirty (30) days of the date of Hotel's notice of change of brand.

In the event of termination by either party under this Section, Hotel shall refund all deposits and/or prepayments made by Group within thirty (30) days of receipt of the notice of termination.

Except as otherwise specifically provided in this Agreement, neither party shall have the right to terminate this Agreement for any other cause.

**INDEMNIFICATION AND HOLD HARMLESS**

Hotel agrees to defend, indemnify and hold Group harmless from and against all claims, costs, losses, expenses, damages, actions, causes of action, and/or liabilities, including reasonable attorneys' fees, arising out of or resulting from: (i) any negligent act undertaken or committed by Hotel pursuant to the performance of its obligations under this Agreement except to the extent such actions or liabilities are due to the misconduct or negligence of Group or its employees, attendees, agents or contractors; or (ii) any breach by Hotel of its obligations under the Sections of this Agreement titled "Compliance with Laws" or "Privacy of Personal Information."

Group agrees to defend, indemnify, and hold Hotel, the entity that owns the hotel, the entity that manages the hotel and their affiliates and each of their respective shareholders, members, directors, officers, managers, employees and representatives harmless from and against all claims, costs, losses, expenses, damages, actions, causes of action, and/or liabilities, including reasonable attorneys' fees, arising out of or resulting from: (i) any negligent act undertaken or committed by Group, its employees, invitees, attendees or any contractors hired or engaged by Group in connection with the performance of Group's obligations under this Agreement, except to the extent such actions or liabilities are due to the misconduct or negligence of Hotel; or (ii) any breach by Group of its obligations under the Sections of this Agreement titled "Compliance with Laws," "Privacy of Personal Information" or "Permits and Licenses."

The parties' obligations under this Section shall survive completion or earlier termination of this Agreement.

**INSURANCE**

Group and Hotel shall each maintain sufficient insurance to insure their obligations set forth in the Section of this Agreement titled "Indemnification and Hold Harmless," and each shall provide evidence of such insurance upon request.

**PERMITS, LICENSES AND APPROVALS**

Group shall, at its sole cost and expense, obtain all licenses, permits and approvals that are: (i) required for the Event; or (ii) required and/or necessary for Group to perform its obligations under this Agreement.  Such licenses or permits include, but are not limited to licenses and permits: (a) from any applicable governing body; or (b) for the use of a third party's intellectual property, including but not limited to any music, videos, performances, and/or images.

EXHIBIT A    4

## CONTRACTORS

For any activity introduced onto Hotel's premises by an outside provider engaged by Group, Group will ensure that such providers comply with the terms of this Agreement and with any requirements for such providers as provided to Group by Hotel. Group will be fully responsible for such providers' actions or inactions and agrees to remove from Hotel's premises any outside provider that Hotel deems objectionable or whose activities cause reasonable concern. Upon request, Group will provide a certificate of insurance from such outside providers covering their actions and naming Hotel, the Hyatt Corporation and their affiliates as additional insureds with regard to their activities.

## AMERICANS WITH DISABILITIES ACT

Hotel acknowledges its obligation to comply with the public accommodations requirements of the Americans with Disabilities Act or similar local laws regarding access and public accommodation ("Public Access Laws") except those of Group including Group's obligation to (i) remove "readily achievable" physical barriers within the meeting rooms utilized by Group that Group created (e.g., set-up of exhibits in an accessible manner) and that are not controlled or mandated by Hotel; (ii) provide auxiliary aids and services where necessary to ensure effective communication of the Event to disabled participants (e.g., Braille or enlarged print handouts, interpreter or simultaneous videotext display); and (iii) modify Group's policies, practices and procedures applicable to attendees as required to enable disabled individuals to participate equally in the Event. Group shall identify in advance any special needs of disabled Event attendees requiring accommodation by Hotel and will notify Hotel of such needs for accommodation in writing as soon as they are identified to Group. Whenever possible, Group shall copy Hotel on correspondence with attendees who indicate special needs requiring accommodation under such Public Access Laws. Hotel shall notify Group of requests for accommodation that it may receive otherwise than through Group to facilitate identification by Group of its own accommodation obligations or needs as required by such Public Access Laws. Any extraordinary costs for special auxiliary aids requested by Group shall be borne by Group.

## COMPLIANCE WITH LAWS

Each party hereby represents, warrants and covenants that it shall comply with all laws, rules, orders and regulations applicable to its performance under this Agreement.

## CHANGES; NOTICE

Any changes to this Agreement must be made in writing and signed by both parties to be effective. Any modifications, additions or corrective lining out made on this Agreement will not be binding unless such modifications have been signed or initialed by both parties. Any notice hereunder shall be given to the individuals listed on the first page of this Agreement at the addresses set forth herein. Notice must be given by: (i) certified or registered mail, return receipt requested; (ii) commercial courier for overnight delivery, with a signature signifying receipt; (iii) facsimile evidenced by a machine-generated receipt; or (iv) email, provided that for notices given by facsimile or email, a confirmation copy must also be sent that same day by commercial courier for overnight delivery as provided herein. All notices shall be deemed delivered upon receipt.

## DAMAGE TO HOTEL PREMISES

Group shall be responsible for all damage to hotel premises caused by Group or its agents or contractors. Upon completion of the Event, Group will leave the premises in the same condition as received, reasonable wear and tear excepted.

Group's obligations under this Section shall survive completion or earlier termination of this Agreement.

## LIMITATION OF LIABILITY

Except for damages covered by the indemnifying party's indemnification obligations as set forth in the Section titled "Indemnification and Hold Harmless," neither party shall be liable to the other for any special, indirect, incidental, consequential, punitive or exemplary damages even if such party has knowledge of the possibility of such damages, provided that in no event shall either party be liable to the other for any lost profits. Under no circumstances shall this limitation of liability limit or waive Group's obligations to pay liquidated damages, including without limitation, Attrition Charges or Cancellation Charges that may be owed.

This Section shall survive completion or earlier termination of this Agreement.

Doc ID: 2b38b923147847984
Sertifi Electronic Signature

## PRIVACY OF PERSONAL INFORMATION

Hotel complies with the Global Privacy Policy for Guests, which is available at http://privacy.hyatt.com (the "Privacy Policy"). If applicable, Group agrees to inform guests or event attendees at Hotel ("Guests") where they may access the Privacy Policy. To the extent that Group transfer information related to any person to Hotel, Group confirms and warrants that it will do so in a manner ensuring appropriate security measures and in compliance with all applicable requirements of data protection and privacy laws and regulations. Group affirms that it (and its Agent, if applicable) is authorized to provide, request, and receive information pertaining to Guests and event attendees as is necessary pursuant to the Guests' hotel stay, event attendance or under this Agreement.  Hotel will protect and use personal data about Guests and event attendees that Hotel receives in connection with its performance of this Agreement and as set forth in the Privacy Policy, provided that Group acknowledges and agrees that certain services (e.g. Passkey) may be provided by a third party and that use of such services may be subject to terms and conditions (including those regarding the access and use of Guest information) different than those in this Agreement.

## HUMAN RIGHTS/COMBATING HUMAN TRAFFICKING

Hyatt's statement relating to human rights and combating human trafficking is available at https://about.hyatt.com/en/hyatt-thrive/human-rights.html.

## GOVERNING LAW; JURISDICTION

This Agreement shall be governed by and construed under the laws of the State or Province in which Hotel's premises are located.  Any controversy, claim or dispute arising out of or relating to this Agreement shall be brought in any court of competent jurisdiction in the State or Province in which Hotel's premises are located for trial and determination without a jury. In the event any legal action is taken by either party against the other party to enforce any of the terms and conditions of this Agreement, it is agreed that the unsuccessful party to such action shall pay to the prevailing party therein all court costs, reasonable attorneys' fees, and expenses incurred by the prevailing party.

## COUNTERPARTS/ELECTRONIC SIGNATURES

This Agreement may be executed in one or more counterparts with an original signature or with a Hotel-approved electronic signature, each of which shall be deemed an original and all of which shall constitute the same instrument.  Further, if a signed Agreement is provided to Hotel as a photocopy, fax, PDF or other format through a Hotel-approved electronic software system, then such Agreement shall be treated and shall have the same binding effect as an original and shall be acceptable to Hotel to hold the Guest Room Block and/or meeting space as set forth herein.

## ENTIRE AGREEMENT

This Agreement, along with the attached Program of Events and Hotel Information Sheet, contains all of the terms agreed to by the parties.  All prior agreements, verbal or written, are no longer effective once this Agreement is signed by the parties. Should there be any conflict between this Agreement and any addenda, exhibits, or attachments, the language of this Agreement shall control.

Doc ID: 26586923119437984
Sertifi Electronic Signature

## PROGRAM OF EVENTS

**PROGRAM OF EVENTS**
Booking # : 271114780
Seattle Business Magazine
1417 4TH AVE STE 600
SEATTLE, WA 98101-2233 US
206-452-2971

1 of 1

| Post As Name | Arrival Date | Departure Date | Contact Name | Sales Manager | Event Planning Manager |
|---|---|---|---|---|---|
| 100 BEST COMPANIES TO WORK FOR 2020 | Jun 17, 2020 | Jun 17, 2020 | Norton, Tanya | Buch, Katelyn | |

| Billing Name | On-Site Contact | | Billing Type | Account Number | Tax Exempt Number |
|---|---|---|---|---|---|
| Seattle Business Magazine | Norton, Tanya | | PREPAYMENT ON FILE | | |

| Event Name | Event Type | Event Time | Attendance | Setup | Room | 24 hour hold |
|---|---|---|---|---|---|---|
| Event Date: Wednesday, 17-Jun-2020 | | | | | | |
| SETUP | SETUP | 02:00 PM - 06:00 PM | 0 | BANQT RNDS 10 | Columbia Ballroom | |
| REGISTRATION | REGISTRATION | 04:00 PM - 09:00 PM | 0 | REGISTRATION | Columbia Ballroom Prefunction | |
| REGISTRATION | REGISTRATION | 04:00 PM - 09:00 PM | 0 | REGISTRATION | 3rd Floor Foyer | |
| DINNER | DINNER | 06:00 PM - 09:00 PM | 1000 | BANQT RNDS 10 | Columbia Ballroom | |

When signed by each party's authorized representative, this Agreement shall constitute a binding agreement between Group and Hotel.

By Hotel's
Authorized Representative

By Group's
Authorized Representative

E-Signed : 09/27/2019 03:16 PM PDT

*Katelyn Buch*

katelyn.buch@hyatt.com
IP: 104.129.202.80

Sertifi Electronic Signature
DocID: 20190925175417984

E-Signed : 09/27/2019 03:13 PM PDT

*Georgia Blerot*

georgia.blerot@tigeroak.com
IP: 50.225.238.14

Sertifi Electronic Signature
DocID: 20190925175417984

By: _____

By: _____

Name:    Katelyn T Buch

Name:    georgia.blerot@tigeroak.com

Title:    Event Sales Manager

Title:    **Georgia Blerot**

Date:    **09/27/2019**

Date:    **09/27/2019**

EXHIBIT A    7

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:                                                              BKY No.: 19-43029
                                                                    Chapter 11 Case

**Tiger Oak Media, Incorporated,**
**Debtor.**

_____

### CERTIFICATE OF SERVICE
_____

I hereby certify that on December 19, 2019, I caused a copy of **Notice of Hearing and Motion Authorizing Rejection of Executory Contract; Verification; Exhibit; and Proposed Order** to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

> US Trustee: ustpregion12.mn.ecf@usdoj.gov, ecfbkup@comcast.net
> Sarah J. Wencil:  Sarah.J.Wencil@usdoj.gov
> Christopher A. Camardello: chris@mantylaw.com, krisann@mantylaw.com;
>                             janet@mantylaw.com; kevin@mantylaw.com
> Jeffrey D. Klobucar:  jklobucar@bassford.com, pcarter@bassford.com
> Patrick D. Newman:  pnewman@bassford.com, pcarter@bassford.com
> Steven H. Silton:  ssilton@cozen.com, akulbeik@cozen.com, ldhanesri@cozen.com,
>                     jnesset@cozen.com
> Michael J. Orme:  morme@ormelaw.com

I further certify that I caused a copy of the **Notice of Hearing and Motion Authorizing Rejection of Executory Contract; Verification; Exhibit; and Proposed Order** to be mailed by US Mail and faxed and/or emailed to the following:

| | | |
|---|---|---|
| Tiger Oak Media, Incorporated<br>Craig Bednar<br>900 South 3rd Street<br>Minneapolis, MN 55415-1209<br>rcbednar@tigeroak.com | Internal Revenue Service<br>Centralized Insolvency Office<br>PO Box 7346<br>Philadelphia PA 19101-7346<br>**Fax:  1-855-235-6787** | MN Dept of Revenue<br>551 Bankruptcy Sections<br>PO Box 64447<br>St. Paul MN 55164<br>Mdor.bkysec@state.mn.us |
| IRS District Director<br>Room 320 Stop 5700<br>30 7th Street E #1222<br>St. Paul MN 55101<br>**No Fax or Email** | Quad<br>Juan R. Mostek<br>N61 W23044 Harry's Way<br>Sussex WI 53089<br>jrmpstek@quad.com | The Law Offices of Alex W. Craigie<br>Alex W. Craigie<br>791 Via Manana<br>Santa Barbara CA 93108<br>alex@craigielawfirm.com |
| Buehler, Beth - Inc<br>Buehler Communications Inc.<br>897 Zeligman St,Unit A<br>Crested Butte CO 81224<br>Bethbuehler4@gmail.com | Northwest Harvest<br>James D. Gibbs<br>PO Box 12272<br>Seattle WA 98102<br>jamesg@northwestharvest.org | LSC Communications US LLC<br>Dan Pevonka<br>4101 Winfield Road<br>Warrenville IL 60555<br>Dan.Pevonka@LSCCom.com |
| Monique Kleinhuizen<br>15840 Jeffrey Avenue N<br>Hugo MN 55038<br>mkleinhuizek@gmail.com | Kevin Besikof<br>Lurie, LLP<br>2501 Wayzata Blvd<br>Minneapolis MN 55405<br>kbesikof@luriellp.com | Choice Financial<br>Attn:  Jeff Elden<br>4501 23rd Avenue South<br>Fargo ND 58104<br>j.elden@bankwithchoice.com |

| | | |
|---|---|---|
| US Attorney<br>300 S 4th Street #600<br>Minneapolis MN 55415<br>**Fax: 612-664-5788** | Carlson Print Group<br>7490 Golden Triangle Drive<br>Eden Prairie MN 55344<br>dblaschko@carlsonprint.com | City Catering Company<br>509 Dexter Ave N<br>Seattle WA 98109<br>contact@citycateringcompany.com |
| Fieldwork Network<br>111 East Wacker Drive<br>Suite 220<br>Chicago IL 60601<br>**contactus@fieldnetwork.com** | GO-Brickman Miken Owner<br>LLC<br>P O Box 31001-2653<br>Pasadena CA 91110-2653<br>**No Fax or Email** | Integrated Consulting Services, LLC<br>Craig Siiro<br>4917 West 93rd Street<br>Bloomington MN 55437<br>Craig.siiro@integrated-consulting.net |
| Washington Dept of Revenue<br>PO Box 47464<br>Olympia WA 98504-74648<br>**No Fax or Email** | Brianna Blazek<br>D&J Printing, Inc.<br>d/b/a Hess Print Solutions<br>3765 Sunnybrook Road<br>Brimfield OH 44240<br>Brianna.Blazek@CJKgroup.com | Embassy Suites<br>Attn: Nicole Andrews<br>255 South King Street<br>Seattle WA 98104<br>**No Fax or Email** |
| RCMA<br>7702 Woodland Drive<br>Suite 120<br>Indianapolis MN 46278<br>**Fax: 317-632-7909** | Savor...McCaw Hall<br>305 Harrison Street<br>Seattle WA 98109<br>Rpassarella@smgworld.com | PSAV<br>c/o Fairmont Olympic Hotel<br>411 University Street<br>Seattle WA 98101<br>**Fax: 206-682-9633** |
| US Postal Service-Generic<br>Attn: Postmaster<br>350 Central Avenue<br>Long Prairie MN 56347<br>**No Fax or Email** | Veritae Group, LLC<br>1650 West End Blvd<br>Suite 100<br>St. Louis Park MN 55416<br>smainquist@veritae.com | Hyatt Regency Seattle<br>Attn: Katelyn Buch<br>808 Howell Street<br>Seattle WA 98101<br>Katelyn.buch@hyatt.com |

Dated this 19th day of December, 2019.

**STEVEN B. NOSEK, P.A.**
/e/ Steven B. Nosek
Steven B. Nosek, #79960
Yvonne R. Doose, #0397066
2855 Anthony Lane South, Suite 201
St. Anthony, MN 55418
(612) 335-9171
snosek@noseklawfirm.com
ydoose@noseklawfirm.com
ATTORNEYS FOR DEBTOR

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                BKY No. 19-43029

Tiger Oak Media, Incorporated,                        Chapter 11

         Debtor.

---

## ORDER

---

    The debtor's Motion authorizing the rejection of executory contract came before the

court.  Based on the arguments of counsel, all of the files, records, and proceedings herein, the

court being fully advised in the premises and accordingly:

**IT IS ORDERED:**

    1.      The Debtor's Motion is Granted.

    2.      The Debtor is authorized to reject the executory contract between it and

Hyatt Corporation, as agent of HT-Seattle Owner, LLC, a Delaware limited liability

company, d/b/a Hyatt Regency Seattle.


Dated:                       _____
                              Michael E. Ridgway
                              United States Bankruptcy Judge