# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 19-43029 |
| Tiger Oak Media, Incorporated, | Chapter 11 |
| Debtor. | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION

Edwin H. Caldie, solely in his capacity as chapter 11 trustee (the "**Trustee**") of Debtor, Tiger Oak Media, Incorporated (the "**Debtor**"), and the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned bankruptcy proceeding, propose the following First Amended Joint Plan of Liquidation (the "**Plan**") pursuant to section 1121(a) of the Bankruptcy Code.

**STINSON LLP**

Andrew J. Glasnovich (#0398366)
Kevin P. Kitchen (#0399297)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Phone: (612) 335-1500
Email: drew.glasnovich@stinson.com
Email: kevin.kitchen@stinson.com

***Attorneys for Edwin H. Caldie,
Chapter 11 Trustee***

**BASSFORD REMELE**
*A Professional Association*
Jeffrey D. Klobucar (#0389368)
Patrick D. Newman (#395864)
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
Email: jklobucar@bassford.com
          pnewman@bassford.com

***Attorneys for the Official Committee of
Unsecured Creditors of Tiger Oak Media,
Inc.***

## TABLE OF CONTENTS

**Page**

**ARTICLE I    DEFINED TERMS AND RULES OF INTERPRETATION** .....................1

Section 1.01    *Definitions* ...........................................................................................1
Section 1.02    *Rules of Interpretation* ........................................................................8
Section 1.03    *Computation of Time* ...........................................................................8
Section 1.04    *Exhibits and Plan Schedules* ................................................................8

**ARTICLE II    ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS** .................8

Section 2.01    *Administrative Claims* ..........................................................................8
Section 2.02    *Priority Tax Claims* ..............................................................................8
Section 2.03    *Payment of Statutory Fees* ...................................................................9

**ARTICLE III    CLASSIFICATION OF CLAIMS AND INTERESTS** ...........................9

Section 3.01    *Generally* ...............................................................................................9
Section 3.02    *Unimpaired Classes* ............................................................................10
Section 3.03    *Impaired Classes Entitled to Vote* ......................................................10
Section 3.04    *Impaired Classes Not Entitled to Vote* ...............................................10

**ARTICLE IV    PROVISIONS FOR TREATMENT OF CLAIMS AND
INTERESTS** ..........................................................................10

Section 4.01    *Class 1 Claim* ......................................................................................10
Section 4.02    *Class 2 Claim* ......................................................................................11
Section 4.03    *Class 3 Claims* ....................................................................................11
Section 4.04    *Class 4 Subordinated Claims* ..............................................................11
Section 4.05    *Class 5 Equity Interests* ......................................................................12

**ARTICLE V    ACCEPTANCE OR REJECTION OF THE PLAN** ............................12

Section 5.01    *Classes Entitled to Vote* ......................................................................12
Section 5.02    *Acceptance by an Impaired Class of Claims or Interest* .....................12
Section 5.03    *Presumed Acceptances by Unimpaired Classes* .................................12
Section 5.04    *Summary of Classes Voting on the Plan* .............................................12
Section 5.05    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* ..............12

**ARTICLE VI    MEANS FOR IMPLEMENTATION OF THE PLAN** ...............................12

Section 6.01    *Establishment of the Liquidating Trust* ...............................................12
Section 6.02    *Funding of Cash Reserves* ..................................................................15
Section 6.03    *Closing of Chapter 11 Case* ...............................................................16

**ARTICLE VII    TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES** .............................................................16

Section 7.01    *Rejection of Contracts* .........................................................................16
Section 7.02    *Rejection Damages Bar Date* ..............................................................16

**ARTICLE VIII    PROVISIONS GOVERNING DISTRIBUTIONS** ...................................... **16**

Section 8.01    *Distributions for Claims Allowed as of the Effective Date* ............................ 16
Section 8.02    *Disbursing Agent* ...................................................................................... 17
Section 8.03    *Subsequent Distributions* .......................................................................... 17
Section 8.04    *Interest on Claims* ..................................................................................... 17
Section 8.05    *Delivery of Distributions and Undeliverable or Unclaimed Distributions* ...................................................................... 17
Section 8.06    *Record Date for Distributions* ................................................................... 17
Section 8.07    *Allocation of Plan Distributions Between Principal and Interest* .................. 17
Section 8.08    *Means of Cash Payment* ............................................................................ 18
Section 8.09    *Setoffs* ....................................................................................................... 18
Section 8.10    *De Minimis Distributions* .......................................................................... 18
Section 8.11    *Release of Liens* ........................................................................................ 18

**ARTICLE IX    PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS** ................................................ **19**

Section 9.01    *Objection Deadline; Prosecution of Objections* ........................................... 19
Section 9.02    *No Distributions Pending Allowance* .......................................................... 19
Section 9.03    *Disputed Claims Reserve* ........................................................................... 19
Section 9.04    *Distributions After Allowance* .................................................................... 19

**ARTICLE X    ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS** ...................................................... **20**

Section 10.01    *Professional Fee Claims* ........................................................................... 20
Section 10.02    *Other Administrative Claims* ..................................................................... 20

**ARTICLE XI    CONFIRMATION AND CONSUMMATION OF THE PLAN** ................ **21**

Section 11.01    *Conditions to Confirmation* ...................................................................... 21
Section 11.02    *Conditions to Effective Date* ..................................................................... 21
Section 11.03    *Waiver of Conditions* ................................................................................ 21

**ARTICLE XII    EFFECT OF PLAN CONFIRMATION ON CLAIMS AND INTERESTS** ............................................................................ **21**

Section 12.01    *No Discharge of Claims Against Debtor* ..................................................... 21

**ARTICLE XIII    RETENTION OF JURISDICTION** ................................................ **22**

Section 13.01    *Exclusive Jurisdiction of Bankruptcy Court* ............................................... 22

**ARTICLE XIV    MISCELLANEOUS PROVISIONS** .............................................. **24**

Section 14.01    *Binding Effect* .......................................................................................... 24
Section 14.02    *Dissolution and Exculpation of the Committee* ........................................... 24
Section 14.03    *Release and Exculpation of the Trustee* ..................................................... 24
Section 14.04    *Amendment or Modification of this Plan* .................................................... 25
Section 14.05    *Revocation, Withdrawal or Non-Consummation* .......................................... 25
Section 14.06    *Effectuating Documents and Further Transactions* ...................................... 25

ii

Section 14.07  *Severability of Plan Provisions*..........................................................................25
Section 14.08  *Successors and Assigns*....................................................................................26
Section 14.09  *Notice* ...............................................................................................................26
Section 14.10  *Governing Law*.................................................................................................27
Section 14.11  *Tax Reporting and Compliance* ......................................................................27
Section 14.12  *Filing of Additional Documents*......................................................................27
Section 14.13  *No Waiver or Estoppel*....................................................................................27

CORE/3522142.0002/172173455.10

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

Section 1.01 *Definitions*.  For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  As used herein:

"*Administrative Claim*" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) or (2) of the Bankruptcy Code, including, but not limited to, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating and liquidating the business of the Debtor, (b) Professional Fee Claims, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code.

"*Administrative Claims Bar Date*" means, except as modified by Section 10.1 of this Plan, the deadline for filing proofs of Administrative Claims shall be sixty (60) days after the day the Confirmation Order becomes a Final Order.

"*Administrative Claims Reserve*" means the reserve established by the Debtor and the Committee, and held in the Liquidating Trust, to pay Administrative Claims, Priority Tax Claims and Non-Tax Priority Claims under this Plan.

"*Allowed*" means, with respect to a Claim, an Allowed Claim in a particular Class or category specified.

"*Allowed Claim*" means a Claim or any portion thereof: (a) that has been allowed by a Final Order; (b) as to which no proof of claim has been timely filed with the Bankruptcy Court and (i) the liquidated and noncontingent amount of which is Scheduled other than at zero, in an unknown amount or as disputed and (ii) no objection to its allowance has been filed, or shall be filed, within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court; (c) as to which a proof of claim has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that such claim is identified in such proof of claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been filed, or shall be filed, within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed in a liquidated amount in this Plan.

"*APAs*" mean the asset purchase agreements entered into between the Trustee and those certain buyers and approved by orders of the Bankruptcy Court in the Chapter 11 Case, pursuant to which the Trustee agreed to sell and the buyer(s) agreed to purchase certain of Debtor's Assets fee and clear of all liens, interests, claims and encumbrances, described as follows: (1) the sale of Debtor's publications Seattle Magazine and Seattle Business Magazine and related assets to Wayne Corp. free and clear of all liens; (2) the sale of Debtor's Brides Media Titles and related assets to Bear Holdings, L.L.C. free and clear of all liens, Claims, and Encumbrances; (3) the sale

1

of Debtor's publications M&E/CP Magazine and related assets to Greenspring Media, L.L.C. free and clear of all liens, Claims and Encumbrances, (4) the sale of the Debtor's publications CLMG Group, to North Co. and (5) any similar asset purchase agreement entered into by the Trustee and the buyer of any of the Debtor's Assets.

"*Assets*" means all of the property of the Debtor and/or the Estate of any kind or nature, and includes, without limitation, all of the Debtor's and/or the Estate's real property, personal property, tangible property, intangible property, accounts, accounts receivable, goods, equipment, furniture, inventory, chattel paper, documents, instruments, Cash, money, fixtures, improvements, easements, contract rights, general intangibles, rents, insurance proceeds, tax refunds, Causes of Action, internet websites, intellectual property, trademarks, trade names, copyrights, subrogation rights, patents, claims and rights of any kind, wherever situated, together with the proceeds thereof including, without limitation, proceeds from the sales that are the subject of the APAs.

"*Avoidance Actions*" means any Causes of Action arising under sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

"*Ballot*" means each of the ballot form or forms distributed to each Holder of an Impaired Claim, on which the Holder is to indicate acceptance or rejection of this Plan.

"*Bankruptcy Code*" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Minnesota or any other court with jurisdiction over the Chapter 11 Case.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

"*Bar Date*" means February 12, 2020, and any supplemental bar dates established by the Bankruptcy Court pursuant to a Final Order.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means legal tender of the United States of America and equivalents thereof.

"*Cash Reserve*" means the cash reserved by the Liquidating Trust, as determined by the Liquidating Trustee for the funding of the Administrative Claims Reserve.

"*Causes of Action*" means any and all actions, causes of action, suits, controversies, rights to legal remedies, rights to equitable remedies and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed or undisputed, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including the Avoidance Actions.

"***Chapter 11 Case***" means the case under Chapter 11 of the Bankruptcy Code involving Debtor, case number 19-43029, filed in the Bankruptcy Court, including all adversary proceedings pending in connection therewith.

"***Claim***" means a "claim," as defined in section 101(5) of the Bankruptcy Code and pertaining to the Chapter 11 Cases.

"***Claims Objection Deadline***" means as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is one hundred eighty (180) days after the Effective Date, and (ii) as to a proof of claim Filed after the Bar Date or Government Bar Date, the first Business Day that is one hundred eighty (180) days after a Final Order is entered deeming the late Filed Claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court.

"***Class***" means a category of Holders of Claims or Interests, as described in Articles II and III of this Plan.

"***Collateral***" means any property or interest in property of the Debtor's Estate that is subject to a valid, enforceable and unavoidable lien to secure a Claim.

"***Confirmation Date***" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"***Confirmation Hearing***" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"***Confirmation Order***" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"***Creditor Fund***" means all funds transferred from the Debtor to the Liquidating Trust pursuant to the terms of this Plan, exclusive of funds (i) reserved by the Liquidating Trustee pursuant to the Trust Agreement, including the Administrative Claims Reserve, (ii) the Disputed Claims Reserve, and (iii) the Professional Fee Escrow.

"***Debtor***" means Tiger Oak Media, Incorporated, the debtor in the Chapter 11 Case pursuant to Section 1108 of the Bankruptcy Code.

"***Disallowed Claim***" means a Claim, or any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; or (b) is (i) Scheduled at zero or as contingent, disputed, or unliquidated and (ii) as to which a Bar Date or Government Bar Date has been established but no proof of claim has been filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

"***Disclosure Statement***" means the written disclosure statement (including all schedules and exhibits thereto or referenced therein) that relates to this Plan, as approved by the Bankruptcy

Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified, or supplemented.

"*Disclosure Statement Hearing*" means the hearing before the Bankruptcy Court held to consider the adequacy of the Disclosure Statement as such hearing may be adjourned or continued from time to time.

"*Disputed Claim*" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that: (a) have been Scheduled at zero, or as contingent, unliquidated or disputed; (b) are identified in a Proof of Claim as contingent or unliquidated or set at $0.00; or (c) are the subject of an objection filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

"*Disputed Claims Reserve*" means one or more reserves of Cash established and maintained by the Liquidating Trustee on account of Disputed Claims in Classes 1, 2, 3, and/or 4.

"*Effective Date*" means the Business Day this Plan becomes effective as provided in Section 11.02 of this Plan.

"*Estate*" means the estate created for the Debtor in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

"*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

"*Exhibit Filing Date*" means the date by which all Exhibits and Plan Schedules shall be filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the deadline for filing objections to confirmation of this Plan.

"*Face Amount*" means: (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated amount of the Claim claimed by the Holder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law; and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

"*File, Filed, or Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"*Final Order*" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was timely filed or, if timely filed, remains pending.

"*General Unsecured Claim*" means a Claim that is not an Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Intercompany Claim.

4

"***Governmental Claim***" means a Claim against the Debtor by a governmental entity.

"***Governmental Claims Bar Date***" means February 12, 2020.

"***Holder***" means any Person that has a Claim.

"***Impaired***" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"***Initial Distribution***" means the distribution occurring on the Initial Distribution Date.

"***Initial Distribution Date***" means the date occurring as soon as possible after the Effective Date as determined, in the discretion of the Liquidating Trustee, upon which Initial Distributions are made with respect to Allowed Claims in Classes 1, 2, 3, and/or 4.

"***Interest***" means the legal, equitable, contractual and other rights of the Holders.

"***IRC***" means the Internal Revenue Code of 1986, as amended.

"***IRS***" means Internal Revenue Service of the United States of America.

"***Lazzari***" means Lazzari + Santori Partners, LLC, the prior owner of the Lazzari Property.

"***Lazzari Property***" means that certain real property located at 900 South 3rd Street, Minneapolis, Minnesota, 55415, previously owned by Lazzari and previously occupied by the Debtor.

"***Lien***" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

"***Liquidating Trust***" means the trust established pursuant to the Liquidating Trust Agreement.

"***Liquidating Trust Agreement***" means the trust agreement establishing and governing the Liquidating Trust, substantially in the form of the document attached as **Exhibit 1** to the Plan and incorporated herein by reference.

"***Liquidating Trustee***" means Edwin H. Caldie, who shall have the responsibility of administering the Liquidation Trust as set forth more fully in the Liquidating Trust Agreement.

"***Litigation Claims***" means the Causes of Action, claims, rights of action, suits, or proceedings for which the applicable statute of limitations has not expired, whether in law or in equity, whether known or unknown, that any or all of the Debtor or its Estate may hold against any Person. The Litigation Claims include, without limitation, the two pending adversary proceedings initiated by the Liquidating Trustee against Lazzari (Adv. P. 21-04011) and Craig Richard Bednar ("Mr. Bednar") and Stacy Ann Bednar ("Ms. Bednar") (Case No. 21-04028).

"***Net Proceeds***" means all proceeds from the sale or other disposition of an asset minus all reasonable out-of-pocket direct costs, fees, and expenses incurred in connection with such sale or other disposition, provisions for any sales or other tax due and owing as a consequence of such

sale or other disposition, and other customary prorations in connection with such sale or other disposition.

"***Non-Tax Priority Claim***" means a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

"***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

"***Petition Date***" means October 7, 2019, the date on which the Debtor filed a voluntary Chapter 11 petition with the Clerk of the Bankruptcy Court, thereby commencing the Chapter 11 Case.

"***Plan***" means this joint plan of liquidation as herein proposed, including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

"***Priority Tax Claim***" means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"***Pro Rata***" means, with respect to a distribution regarding a particular Class, the proportion that (a) the Allowed Amount of a Claim in a particular Class bears to (b) the aggregate Allowed Amount of all Claims in such Class, unless this Plan provides otherwise.

"***Professional***" means (i) the Trustee, and (ii) any professional employed in the Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code.

"***Professional Fee Claim***" means an Administrative Claim under section 326, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred on behalf of the Debtor in the Chapter 11 Case on or prior to the Effective Date (including expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such). For purposes of applications made in accordance with Section 326, the "moneys disbursed or turned over in the case" shall include the fair-market value of all Assets transferred to the Liquidating Trust.

"***Purchased Assets***" means the following assets the Debtor has sold with the Bankruptcy Court's approval:

      a.   Seattle Magazine and Seattle Business Magazine and related assets;

      b.   Brides Media Titles and related assets;

      c.   M&E/CP Magazine and related assets;

      d.   CLMG and related assets; and

6

      e.  Other assets of the Debtor sold by the Trustee pursuant to an order of the Bankruptcy Court.

"***Record Date***" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date.

"***Scheduled***" means, with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"***Schedules***" means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

"***Secured Claim***" means an Allowed Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

"***Solicitation Order***" means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

"***Subordinated Claims***" means any Claim subordinated pursuant to section 510 of the Bankruptcy Code, or otherwise subordinated.

"***Subsequent Distribution***" means any distribution after the Initial Distribution.

"***Subsequent Distribution Date***" means the date upon which the Liquidating Trustee determines, in accordance with this Plan, to conduct a Subsequent Distribution.

"***Treasury Regulations***" Internal Revenue Code of 1986, as amended and the regulations promulgated thereunder.

"***Unimpaired Claim***" means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"***Unsecured Claims***" means collectively the General Unsecured Claims.

"***Voting Deadline***" means **---------,** 2022 at 5:00 p.m., as the last day and time for submitting Ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

"***Voting Record Date***" means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those Holders of Claims against the Debtor entitled to vote on the Plan.

Section 1.02 *Rules of Interpretation*. For purposes of this Plan, unless otherwise provided herein: (a) whenever it appears appropriate for the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine and neuter; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Plan Schedules are references to Sections, Articles and Plan Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

Section 1.03 *Computation of Time*. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided for herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

Section 1.04 *Exhibits and Plan Schedules*. All Exhibits and Plan schedules are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits and Plan schedules shall be Filed on or before the Exhibit Filing Date.

## <u>ARTICLE II</u>
## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

Section 2.01   *Administrative Claims*.  As soon as reasonably practicable, but no later than ten (10) Business Days following the later of (a) the Effective Date, or (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other less favorable treatment as to which the Holder of such Allowed Administrative Claim and (a) the Trustee and the Committee, prior to the Effective Date, or (b) the Liquidating Trustee on or after the Effective Date, shall have agreed upon in writing..

Section 2.02   *Priority Tax Claims*.  As soon as reasonably practicable, but no later than ten (10) Business Days following the later of (a) the Effective Date, or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim against a Debtor shall receive in full satisfaction, settlement and release of, and in exchange for, such Allowed Priority Tax Claim, (i) Cash equal to the amount of such Allowed Priority Tax Claim, or (ii) such other less favorable treatment as to which the Holder of such

Allowed Priority Tax Claim and (a) the Trustee and the Committee, prior to the Effective Date, or (b) the Liquidating Trustee  on or after the Effective Date, shall have agreed upon in writing; provided, however, that, at the election of the Trustee prior to the Effective Date, any or all Allowed Priority Tax Claims may be paid by the Liquidating Trustee in regular installments over a period ending not later than five (5) years after the Petition Date and in a manner no less favorable than the treatment provided on account of General Unsecured Claims hereunder; and provided further that the Liquidating Trustee may prepay remaining Allowed amounts of any Priority Tax Claim at any time without penalty or further interest; and provided further that any Priority Tax Claim that is not an Allowed Claim, including any Allowed Priority Tax Claim not due and owing on the Effective Date, will be paid in accordance with this Section 2.02 when such Claim becomes Allowed and due and owing; and provided further, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be Disallowed Claim pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtor or its Estate.

Section 2.03   *Payment of Statutory Fees*.  All fees ("Statutory Fees") payable pursuant to section 1930 of title 28, United States Code will be paid on or as soon as reasonably practicable after the Effective Date.   After the Effective Date, the Liquidating Trustee shall pay the fees through the Liquidating Trust until the case is no longer open in Chapter 11.   After the Effective Date, the Liquidating Trustee shall submit all post-confirmation reports to the Office of the United States Trustee through the date the case is closed and such time a closed case is reopened.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 3.01   *Generally*.  Set forth below is a designation of classes of Claims against and Interests in the Debtor.  All Claims and Interests, except Administrative Claims, Priority Tax Claims, and Statutory Fees are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article II above.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of voting on, and receiving distributions pursuant to, this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

| Class | Impairment | Voting Right |
|---|---|---|
| Class 1- Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 2- Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3- General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4- Subordinated Claims | Impaired | Entitled to Vote |
| Class 5- Equity Interests | Impaired | Not Entitled to Vote |

Section 3.02    *Unimpaired Classes*.  The Plan classifies the following Unimpaired Claims that are not entitled to vote on this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a Claim in the following Classes is conclusively presumed to have accepted this Plan in respect of such Claims.  Accordingly, Holders of Claims in such Classes are not entitled to vote to accept or reject this Plan and the votes of such Holders are not being solicited in connection with this Plan.  Such Claims against the Debtors are classified as follows:

(a)    Class 1 shall consist of certain Secured Claims ("Class 1 Claims" or "Class 1 Secured Claims");

(b)    Class 2 shall consist of certain Secured Claims ("Class 2 Claims" or "Class 2 Secured Claims"); and

(c)    Class 5 shall consist of certain insider Equity Interests ("Class 5 Claims").

Section 3.03    *Impaired Classes Entitled to Vote*.  This Plan classifies the following Impaired Claims that shall receive a distribution under this Plan that are entitled to vote to accept or reject this Plan:

(a)    Class 3 shall consist of all General Unsecured Claims ("Class 3 Claims" or "Class 3 General Unsecured Claims"); and

(b)    Class 4 shall consist of certain subordinated Unsecured Claims ("Class 4 Claims" or "Class 4 Subordinated Claims").

Section 3.04    *Impaired Classes Not Entitled to Vote*.  This Plan classifies the following Impaired Claims and Impaired Interests that are not entitled to vote on this Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of a Claim or Interest in the following Classes is conclusively presumed to have rejected this Plan in respect of such Claims or Interests.  Accordingly, such Holders of Claims or Interests are not entitled to vote to accept or reject this Plan and the votes of such Holders are not being solicited in connection with this Plan.  Such Claims against and Interests in the Debtors are classified as follows:

(a)    Class 5 shall consist of all Interests of Holders of Equity Interests ("Class 5 Interests" or "Class 5 Equity Interests").

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

Section 4.01 *Class 1 Claim*.  Class 1 Claim is Unimpaired.

(a)    **Definition**. Class 1 Claim means the Secured Claim filed by Mr. Craig Bednar, Claim No. 192-1, in the amount of $293,807.70, which purports to be secured by all Assets of the Debtor.

(b)    **Treatment.** The Class 1 Claim is a Disputed Claim. To the extent that the Claim becomes an Allowed Claim and has not already been paid pursuant to a prior order of the Bankruptcy Court, each Holder of an Allowed Class 1 Claim shall receive from the

Creditor Fund, in full satisfaction, settlement, release, and extinguishment, and in exchange for such Claim: the amount of such unpaid Allowed Claim, plus interest accruing from March 18, 2021 through the date of payment in full of the Allowed Class 1 Claim, at a rate of 6.00% per annum, in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the date on which such Class 1 Claim becomes Allowed pursuant to a Final Order.

Section 4.02 *Class 2 Claim*.  Class 2 Claim is Unimpaired.

(a)     **Definition**. Class 2 Claim means the Secured Claim filed by Mr. Craig Bednar, Claim No. 193-1, in the amount of $673,128.18, which purports to be secured by all Assets of the Debtor.

(b)     **Treatment**. The Class 2 Claim is a Disputed Claim. To the extent that the Secured Claim becomes an Allowed Claim and has not already been paid pursuant to prior order of the Bankruptcy Court, each Holder of an Allowed Class 2 Claim shall receive from the Creditor Fund, in full satisfaction, settlement, release, extinguishment, and in exchange for such Claim:  the amount of such unpaid Allowed Claim, plus interest accruing from March 18, 2021 through the date of payment in full of the Allowed Class 2 Claim, at a rate of 6.00% per annum, in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the date on which such Class 2 Claim becomes Allowed pursuant to a Final Order.

Section 4.03 *Class 3 Claims*.  Class 3 General Unsecured Claims are Impaired.

(a)     **Definition**. A Class 3 Claim is a General Unsecured Claim.

(b)     **Treatment**. On the Initial Distribution Date, or as soon thereafter as is reasonably practicable, and on each Subsequent Distribution Date, the Liquidating Trustee shall, in full satisfaction, settlement and release of, and in exchange for, each and every Allowed Class 3 Claim, distribute Pro Rata to or for the benefit of Holders of Allowed Class 3 Claims the ratable portion the Creditor Fund remaining after the payment of Class 1 and 2 Claims. If the Face Value of all Allowed Class 3 Claims is paid in full, the Holder of an Allowed Class 3 Claim is further entitled to payment of interest accruing from the Petition Date, through the date the Face Value of the Class 3 Claim is paid in full, at the rate of 5.00% per annum.

Section 4.04 *Class 4 Subordinated Claims*.  Class 4 Subordinated Claims are Impaired

(a)     **Definition**. A Class 4 claim means any Allowed Claim that is subordinated, by a Final Order, to General Unsecured Claims.

(b)     **Treatment**. The Liquidating Trustee shall, in full satisfaction, settlement and release of, and in exchange for, each and every Allowed Class 4 Claim, distribute Pro Rata to or for the benefit of Holders of Allowed Class 4 Claims the ratable portion the Creditor Fund remaining after the payment of Class 1, 2, and 3 Claims in full, including any interest provided for herein. If the Face Value of all Allowed Class 4 Claims is paid in full, the Holder of an Allowed Class 4 Claim is further entitled to payment of interest accruing from

the Petition Date, through the date the Face Value of the Class 4 Claim is paid in full, at the rate of 5.00% per annum.

Section 4.05 *Class 5 Equity Interests*. Class 5 Equity Interests are Impaired.

(a)    **Definition**. A Class 5 Claim means the Equity Interests of Mr. Bednar in the Debtor.

(b)    **Treatment**. After payment of all Allowed Claims in Classes 1, 2, 3, and 4, the Liquidating Trustee shall distribute Pro Rata to or for the benefit of Holders of Equity Interests the ratable portion of the Creditor Fund remaining after the payment of Class 1, 2, 3, and 4 Claims in full, including any interest provided for herein.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

Section 5.01 *Classes Entitled to Vote*. Subject to Sections 5.03 and 5.04 of this Plan, Claim Holders in Impaired Classes of Claims are entitled to vote as a class to accept or reject this Plan.

Section 5.02 *Acceptance by an Impaired Class of Claims or Interest*. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

Section 5.03 *Presumed Acceptances by Unimpaired Classes*. Class 1 and Class 2 hold Unimpaired Claims by this Plan. Under section 1126(f) of the Bankruptcy Code, such Claim Holders are conclusively presumed to accept this Plan, and the votes of such Claim Holders will not be solicited.

Section 5.04 *Summary of Classes Voting on the Plan*. As a result of the provisions of Sections 5.01, 5.03 and 5.04 of this Plan, the votes of Holders of Claims in Classes 3, 4, and 6 will be solicited with respect to this Plan.

Section 5.05 *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*. To the extent that any Impaired Class entitled to vote rejects this Plan or is deemed to have rejected this Plan, the Debtor will request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 6.01 *Establishment of the Liquidating Trust*. On the Effective Date, a trust will be established to administer and distribute the Assets of the Debtor's Estate and will be known as the "**Liquidating Trust**." In the event of any conflict between the terms of this Plan and the terms of the Liquidating Trust, the terms of this Plan shall govern. On the Effective Date, the Liquidating

Trustee shall execute the Liquidating Trust Agreement and shall take all other steps necessary to establish the Liquidating Trust.

(a) *Purpose of the Liquidating Trust*.  The Liquidating Trust shall be established for the sole purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. For the avoidance of doubt, the Liquidating Trust is permitted to and shall take any actions reasonably required to effectuate the Plan, provided that such actions are consistent with the purpose of the Liquidating Trust.

(b) *Powers of the Liquidating Trustee*.  The powers of the Liquidating Trustee are set forth in full in the Liquidating Trust Agreement and shall include, among other things: (1) the power to sell, lease, license, abandon, or otherwise dispose of all remaining Assets of the Liquidating Trust Estate subject to the terms of this Plan; (2) the power to wind up the Debtor and its affairs, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about and orderly wind up of the Debtor's operations; (3) the power to effect distributions under this Plan to the Holders of Allowed Claims; (4) the authority to pay all costs and expenses of administering the Liquidating Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons and Entities to assist the Liquidating Trustee in carrying out the Liquidating Trustee's duties hereunder, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (5) the power to implement this Plan including any other powers necessary or incidental thereto; (6) the authority to object to, waive, pursue, and/or settle Claims, applicable Causes of Action or disputes as to amounts owing to or from the Estate; (7) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order; (8) the authority to participate in actions to enforce or interpret this Plan; (9) the authority to execute and deliver any documents required under the APAs; and (10) the power to bind the Liquidating Trust. Each of the foregoing powers may be exercised by the Liquidating Trustee as of the Effective Date without further notice to any party, or action, approval, or Order of the Bankruptcy Court.

(c) *Compensation to Liquidating Trustee*.   The Liquidating Trustee shall be compensated in accordance with the relevant provisions of the Liquidating Trust Agreement and any other applicable orders of the Bankruptcy Court.

(d) *Liquidating Trust Assets*.  On the Effective Date, or as soon thereafter as is practicable, all of the property of the Estate shall be transferred, free and clear of all claims, liens, interests, encumbrances, and distributed to and shall vest in the Liquidating Trust without further action or Court order, including, without limitation, (i) all of the Debtor's Assets; (ii) the Litigation Claims; and (iii) all Cash; provided, however, that the funds in the Professional Fee Escrow Account shall only be used to pay Professional Fee Claims until all Professional Fee Claims are paid in full.  In the event that all Professional Fee Claims are paid in full, any remaining funds in the Professional Fee Escrow Account shall be added to the Creditor Fund. The Liquidating Trust shall have the power to act with respect to the assets being assigned and distributed to the Liquidating Trust, and shall have the right and power, as representative and attorney in fact for the Estate, to prosecute the aforementioned rights, claims and Causes of

Action, including, without limitation, objections to Claims and pursuit of Avoidance Actions, without further Bankruptcy Court approval. The Estate shall retain the right, title and interest in and to all rights, claims and Causes of Action against third parties in order to preserve such rights, claims and Causes of Action; and the Liquidating Trustee, as representative of the Estate appointed for such purpose, pursuant to Bankruptcy Code Section 1123(b)(3)(B), may enforce such claims as he deems appropriate; provided, however, that the proceeds of all Causes of Action shall be transferred to the Liquidating Trust.

(e) *Tax Treatment of Transfer of Property to Liquidating Trust.* The Liquidating Trust is intended to be treated, for U.S. federal income tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the Holders of Allowed Class 1,2,3,4, and 5 Claims, who may be entitled to distributions from the Liquidating Trust assets as more specifically provided for under this Plan and the Trust Agreement. Accordingly, for all U.S. federal income tax purposes the transfer of property of the Estate to the Liquidating Trust under this Plan will be treated as the transfer of assets by the Debtor to the Holders of Allowed Class 1,2,3,4 and/or 6 Claims entitled to distributions from the Liquidating Trust assets. The Liquidating Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, make timely distributions to the Liquidating Trust beneficiaries and not unduly prolong its duration. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidating Trustee expressly for such purpose. The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidating Trust beneficiaries treated as grantors and owners of the Liquidating Trust assets for U.S. federal income tax purposes. The Liquidating Trustee will be required by the Liquidating Trust Agreement to file U.S. federal tax returns for the Liquidating Trust as a grantor trust with respect to any Liquidating Trust assets and as one or more disputed ownership funds with respect to all other funds or other property held by the Liquidating Trust pursuant to applicable Treasury Regulations, and any income of the Liquidating Trust will be treated as subject to tax on a current basis. The Liquidating Trustee shall be the administrator of such disputed ownership funds and shall be responsible for all tax reporting and withholding requirements. The Liquidating Trust Agreement will provide that the Liquidating Trustee will pay such taxes from the Liquidating Trust assets. In addition, the Liquidating Trust Agreement will require consistent valuation by the Liquidating Trustee and, only to the extent required by U.S. Treasury regulation or other applicable law, by the Liquidating Trust beneficiaries, for all U.S. federal income tax purposes, of valuing any property held by the Liquidating Trust. The Liquidating Trust Agreement will provide that, unless otherwise provided in this Plan or the Liquidating Trust Agreement, termination of the trust will occur no later than five years after the Effective Date. The Liquidating Trust Agreement also will limit the investment powers of the Liquidating Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Liquidating Trust to distribute its net income annually, except for amounts retained, in the Trustee's sole discretion, as reasonably necessary to maintain the value of the Liquidating Distribution Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

(f) *Exemption from Transfer Taxes*. Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of any property under the Plan (including transfers to and from the Liquidating Trust), the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by, the Plan or the vesting, transfer or sale of any real or personal property of the Debtor  pursuant to, in implementation of or as contemplated by, the Plan will not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded will, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any stamp tax, transfer tax or similar tax or fee.

(g) *Responsibilities of the Liquidating Trustee*.  The Liquidating Trustee shall have the rights set forth in this Plan, as well as any additional rights and responsibilities set forth in the Liquidating Trust Agreement.

(h) *Beneficiaries*.  The beneficiaries of the Liquidating Trust shall consist of Holders of Allowed Class 1, 2, 3, 4, and 5 Claims or Interests.

(i) *Expenses Incurred on or After the Effective Date*.  The Liquidating Trustee may incur Liquidating Trust Expenses as set forth more fully in the Liquidating Trust Agreement.

(j) *Distributions from the Liquidating Trust*.  The Liquidating Trustee shall make all applicable distributions and deliveries required under the Plan as set forth more fully in the Liquidating Trust Agreement.

(k) *Termination of the Liquidating Trust and Filing of Final Report*.  The Liquidating Trust shall terminate, and the Liquidating Trustee will be discharged from his duties in relation to the Liquidating Trust, without any further action by the Liquidating Trustee upon the earlier of 180 days after the docketing of a Final Order closing the Case or five (5) years after the Effective Date, unless such termination date is extended by order of the Bankruptcy Court upon a finding that the extension is necessary to the liquidating purposes of the Liquidating Trust.  Prior to such termination and within thirty (30) days after the Final Distribution Date, the Liquidating Trustee shall file with the Court, and serve on the United States Trustee and the parties appearing on the latest Master Service List, a final report containing a detailed, comprehensive and cumulative statement of all activities of the Liquidating Trust during its existence, as set forth more fully in the Liquidating Trust Agreement.

(l) *Exculpation*.  The Liquidating Trustee, and any Professionals retained by the Liquidating Trustee, are exculpated by Holders of Claims and Interests from any and all claims (but excluding claims for willful misconduct and gross negligence), causes of action, and other assertions of liability (including breach of fiduciary duty) as set forth more fully in the Liquidating Trust Agreement.

Section 6.02 *Funding of Cash Reserves*.  On the Effective Date, the Liquidating Trust shall fund Cash Reserves in such amounts as determined by the Liquidating Trustee as necessary in order to be able to make the required future payments under the Administrative Claims Reserve.

Section 6.03 *Closing of Chapter 11 Case*.  When all Disputed Claims Filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and all of the property transferred to the Liquidating Trust has been liquidated and converted into Cash, and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 7.01 *Rejection of Contracts*.  Except as otherwise provided in this Article VII, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtor and any Person shall be deemed rejected by the Trustee effective as of the Effective Date subject to the occurrence of the Effective Date, except for executory contracts and unexpired leases which:

(a)  have been assumed, assumed and assigned, or rejected (including rejection with a delayed effective date), as applicable, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; or

(b)  as of the Effective Date, are subject to a pending motion for approval of the assumption, assumption and assignment, or rejection, as applicable.

Section 7.02 *Rejection Damages Bar Date*. To the extent not subject to a claims bar date set forth in any prior or subsequent order of the Bankruptcy Court, Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan and the Confirmation Order must be filed within sixty (60) days after the entry of the Confirmation Order. All Claims arising from the rejection of an Executory Contract or Unexpired Lease for which proofs of claim are timely Filed, if Allowed, will be classified and treated as General Unsecured Claims, subject to the provisions of this Plan.  Any Claims arising out of the rejection of an Executory Contract or Unexpired Lease not filed within the applicable time period set forth herein shall be forever barred from receiving a distribution under the Plan and/or Liquidating Trust Agreement.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

Section 8.01 *Distributions for Claims Allowed as of the Effective Date*. Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Articles VIII and IX of this Plan.

16

Section 8.02 *Disbursing Agent*. The Liquidating Trustee shall make all distributions required under this Plan from the proceeds of the respective assets transferred to the Liquidating Trust.

Section 8.03 *Subsequent Distributions*. The Liquidating Trustee shall determine, in accordance with this Plan, when to make a Subsequent Distribution based on the amount of Cash available in the Liquidating Trust at the time of such determination.

Section 8.04 *Interest on Claims*. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law: (i) postpetition interest shall not accrue or be paid on Claims, and no Claim Holder shall be entitled to interest accruing on or after the Petition Date on any Claim; and (ii) postpetition interest, if any, shall not accrue or be paid upon any Disputed Claim unless the Disputed Claim becomes an Allowed Claim.

Section 8.05 *Delivery of Distributions and Undeliverable or Unclaimed Distributions*.

(a)     Distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee (i) at the addresses designated for payment set forth on the proofs of claim Filed by such Claim Holders (or at the address set forth in any applicable notice of assignment of claim or notice of change of address), (ii) at the addresses set forth in any written notices of address changes Filed by such Claim Holders after the date of any related proof of claim, or (iii) at the addresses reflected in the Schedules if no proof of claim has been filed.

(b)     If any Claim Holder's distribution is returned as undeliverable: (i) no further distributions to such Claim Holder shall be made unless and until the Liquidating Trustee is notified of such Claim Holder's then current address, at which time all distributions shall be made to such Claim Holder without any further interest; (ii)the returned distribution shall be retained by the Liquidating Trustee until such distributions are claimed or revert to the Liquidating Trust as set forth herein. Any Claim Holder whose distribution is returned as undeliverable shall have until the later of the first (1st) anniversary of the Effective Date or ninety (90) days from the date the distribution is returned as undeliverable to make a claim with the Liquidating Trustee for the undeliverable distribution. After such applicable date, the undeliverable distribution shall revert to the Liquidating Trust, free of any restrictions thereon or Claims of such Holder and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

Section 8.06 *Record Date for Distributions*. The Liquidating Trustee shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim or Interest that occurs after the Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims who are Holders of such Claims, or participants therein, as of the Record Date. The Liquidating Trustee shall instead be entitled to recognize and deal with for all purposes under the Plan, only those record Holders stated on the official claims register or the official transfer ledger, as the case may be, as of the Record Date.

Section 8.07 *Allocation of Plan Distributions Between Principal and Interest*. To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of

indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

Section 8.08 *Means of Cash Payment*.  Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the discretion of the Liquidating Trustee, by (a) checks drawn on a domestic bank, (b) wire transfer from a domestic bank, or (c) another commercially reasonable form of payment.

Section 8.09 *Setoffs*.  The Liquidating Trustee may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Liquidating Trust r may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Liquidating Trust may have against such Holder.

Section 8.10 *De Minimis Distributions*.  Notwithstanding any other provision of this Plan, the Liquidating Trustee shall have no obligation to make a distribution on account of an Allowed Claim or account to a specific Holder of an Allowed Claim if the amount to be distributed to that Holder on the Initial Distribution Date or Subsequent Distribution Date (i) does not constitute a final distribution to such Holder, and (ii) is less than $50.00.  In addition, the Liquidating Trustee reserves the right to request subsequent relief from the Bankruptcy Court to exclude Holders of smaller Claims from the final distribution under this Plan to the extent that the amounts otherwise distributable to such Holders in connection with such final distribution would be *de minimis* or create undue administrative expense.

Section 8.11 *Release of Liens*.  Except as otherwise provided of this Plan or in any contract, instrument, release, or other agreement or document created or assumed in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against the Assets of the Estate and all Assets transferred to the Liquidating Trust, shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Liquidating Trust and its successors and assigns. To the extent that any termination statements, instruments of satisfaction, or other similar releases of interests necessary to terminate or otherwise remove from title or record any filed financing statements, mortgages, or other documents or agreements evidencing a security interest in the Assets of the Estate shall not have been delivered to the Trustee in proper form for filing and executed by the appropriate parties prior to, or in connection with, the satisfaction of the Secured Claims, then the Liquidating Trustee is hereby authorized to (a) execute and file such statements, instruments, releases or other documents on behalf of the Holder of the Secured Claim with respect to the encumbered assets, and (b) to file, register, or otherwise record a certified copy of the Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all security interests in the Assets of the Estate of any kind or nature whatsoever.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
## AND UNLIQUIDATED CLAIMS

Section 9.01 *Objection Deadline; Prosecution of Objections*.  After the Effective Date, the Liquidating Trustee shall be responsible for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions on account of the respective Claims against the Debtor. No later than the Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Liquidating Trustee shall File objections, if any, to Claims and serve such objections upon the Holders of each of the Claims to which objections are made. Moreover, notwithstanding the expiration of the Claims Objection Deadline and unless subsequently ordered for good cause shown to shorten time, the Liquidating Trustee shall continue to have the right to amend any objections and to File and prosecute supplemental objections and counterclaims to a Disputed Claim. In accordance with <u>Article VI</u> of this Plan, the Liquidating Trustee shall be authorized to, and may in his discretion, resolve all Disputed Claims by withdrawing or settling such objections thereto or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction over the validity, nature, and/or amount thereof. On motion to the Bankruptcy Court, the Claims Objections Deadline may be extended. On and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive authority and standing to object to Claims and may, in his sole discretion, intervene, substitute as the property party-in-interest, interplead or otherwise participate in any Claim objection that is pending as of the Effective Date.

Section 9.02 *No Distributions Pending Allowance*.  Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim and the remainder has become a Disallowed Claim; <u>provided</u>, <u>however</u>, that Professional Fee Claims shall be governed by the Professional Fee Order and <u>Article X</u> below.

Section 9.03 *Disputed Claims Reserve*.  The Liquidating Trustee shall withhold the Disputed Claims Reserve to be distributed to particular Classes under this Plan.  The Disputed Claims Reserve shall be equal to 150% of distributions to which Holders of Disputed Claims in Classes 1, 2, 3, or 4 would be entitled to under this Plan as of such date if such Disputed Claims in Classes 1, 2, 3, or 4 were Allowed Claims in their (a) Face Amount (or if a Disputed Claim is unliquidated with no Face Amount, then based upon the good faith estimate of such Disputed Claim as estimated by the Liquidating Trustee), or (b) estimated amount of such Disputed Claim as approved in an order by the Bankruptcy Court.  The Debtor or the Liquidating Trustee may request estimation for any Disputed Claim including, without limitation, any Disputed Claim that is contingent or unliquidated.  Nothing in this Plan or the Disclosure Statement shall be deemed to entitle the holder of a Disputed Claim to postpetition interest on such Claim.

Section 9.04 *Distributions After Allowance*.  Payments and distributions from the Disputed Claims Reserve shall be made as appropriate to the Holder of any Disputed Claim that has become an Allowed Claim, as soon thereafter as is reasonably practicable after the date such Disputed Claim becomes an Allowed Claim.  Such distributions shall be based upon the cumulative distributions that would have been made to the Holder of such Claim under the Plan if the Disputed

19

Claim had been Allowed on the Effective Date (excluding any present value calculations) and shall not be limited by the Disputed Claim amounts previously reserved with respect to such Disputed Claim to the extent that additional amounts are available therefor, but only to the extent that such additional amounts have not yet been distributed to Holders of Allowed Claims.  Upon such distribution, the reserve shall be reduced by an amount equal to the amount reserved with respect to such Disputed Claim.  To the extent the amount reserved for such Disputed Claim exceeds the Allowed Amount, if any, of such Claim, the remainder shall be distributed to Holders of Allowed Claims in accordance with the provisions of <u>Articles IV and VIII</u> of this Plan.

### <u>ARTICLE X</u>
### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

Section 10.01 *Professional Fee Claims*.

(a)     On the Effective Date, the Debtor shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order.  On the Effective Date, the Liquidating Trustee shall escrow funds equal to the aggregate amount of outstanding fee applications, of Professionals retained by the Debtor, Committee, or Trustee, not ruled upon by the Bankruptcy Court as of the Effective Date plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed by such Professionals as of the Effective Date.  Such escrow shall be used by the Liquidating Trustee to pay the remaining Professional Fee Claims owing to Professionals as and when Allowed by the Bankruptcy Court.  When all such Professional Fee Claims have been paid in full, amounts remaining in such escrow account, if any, shall be returned to the Liquidating Trust for distribution to Allowed Claims in accordance with the provisions of <u>Article IV and VIII</u> of this Plan.

(b)     All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 326, 327, 328, 330, 331, 503(b), and/or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including compensation and expenses for making a substantial contribution in the Chapter 11 Case) shall File and serve such applications on counsel for the Committee and Trustee, the United States Trustee and as otherwise required by the Bankruptcy Court and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.  All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid within ten (10) days after the entry of an order allowing such fees and expenses, or as soon thereafter as practicable.

Section 10.02 *Other Administrative Claims*.   All other requests for payment of an Administrative Claim (other than as set forth in <u>Section 10.01</u> of this Plan), must be Filed and served on counsel for the Trustee or Liquidating Trustee, as applicable, no later than the Administrative Claims Bar Date. Unless the Trustee or Liquidating Trustee objects to an Administrative Claim within sixty days (60) days after the Administrative Claims Bar Date, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Trustee or the Liquidating Trustee objects to an Administrative Claim and the objector and such claimant are unable to resolve their dispute consensually, then the objector shall File a motion for determination within thirty (30) days following the request of such claimant.  Thereafter, the

Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, the Trustee or Liquidating Trustee, as applicable, may pay, in its discretion, in accordance with the terms and conditions of any agreements relating thereto, any Administrative Claim as to which no request for payment has been timely Filed but which is paid or payable in the ordinary course of business.

## ARTICLE XI
## CONFIRMATION AND CONSUMMATION OF THE PLAN

Section 11.01 *Conditions to Confirmation*.  The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with <u>Section 11.03</u> of the Plan:

(a)     The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance reasonably acceptable to the Trustee and the Committee.

(b)     The Confirmation Order shall be in form and substance reasonably acceptable to the Trustee and the Committee.

Section 11.02 *Conditions to Effective Date*.  The following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order shall be in form and substance acceptable to the Trustee and the Committee and shall have been entered by the Bankruptcy Court and shall be a Final Order, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(b)     All relevant transactions set forth in <u>Article VI</u> of this Plan shall have been entered into and all conditions precedent to the consummation thereof shall have been satisfied.

(c)     Any order necessary to satisfy any condition to the effectiveness of the Plan shall have become a Final Order and all documents provided for under the Plan shall have been executed and delivered by the parties thereto.

(d)     The Trustee shall file with the Bankruptcy Court a Notice of the Occurrence of the Effective Date and serve the notice on the Master Service List.

Section 11.03 *Waiver of Conditions*.  The conditions set forth in <u>Sections 11.01</u> and <u>11.02</u> of this Plan may be waived, in whole or in part, jointly by the Trustee and Committee. The failure of the Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XII
## EFFECT OF PLAN CONFIRMATION ON CLAIMS AND INTERESTS

Section 12.01 *No Discharge of Claims Against Debtor*.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtor; <u>provided</u>,

<u>however</u>, that no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtor, or its successors or Estate, except as expressly provided in this Plan.

**ARTICLE XIII
RETENTION OF JURISDICTION**

Section 13.01 *Exclusive Jurisdiction of Bankruptcy Court*. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

(c)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which either Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)     Resolve any matters relating to the pre- and post-confirmation sales of the Debtor's or Liquidating Trust's assets;

(e)     Enforce, implement or clarify all orders, judgments, injunctions, and rulings entered by the Bankruptcy Court;

(f)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(g)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(i)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan,

or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(j)      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(k)      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code.

(l)      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(m)     Hear and determine the Litigation Claims and any other Causes of Action by or on behalf of the Debtor or the Estate;

(n)      Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(o)      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to this Plan are enjoined or stayed;

(p)      Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(q)      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(r)      Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date and (ii) the winding up of the Debtor's affairs;

(s)      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(t)      Adjudicate any and all Causes of Action, adversary proceedings, applications and contested matters that have been or hereafter are commenced or maintained in or in connection with the Chapter 11 Cases or this Plan, including, without limitation, any adversary proceeding or contested matter, proceedings to adjudicate the allowance of

Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

(u)     Hear and determine all matters involving Claims or Causes of Action involving the Debtor or its property;

(v)     Hear and determine all matters relating to the enforcement and interpretation of this Plan; and

(w)     Enter an order closing the Chapter 11 Case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to hear and determine disputes concerning (i) Claims or (ii) Causes of Action and any motions to compromise or settle such disputes. Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Liquidating Trustee chooses to pursue any Claim or Cause of Action (as applicable) in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.01 *Binding Effect*.  This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, other parties in interest and their respective successors and assigns as of the entry of the Confirmation Order.

Section 14.02 *Dissolution and Exculpation of the Committee.* On the Effective Date, the Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in this Chapter 11 case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims. Further, from and after the Effective Date, none of the members of the Committee or its Professionals shall have or incur any liability for, and each shall be released from, any claim, Cause of Action or liability to any Holder or any other party in interest, for any act or omission that occurred during and in connection with this Chapter 11 Case or in connection with the preparation and Filing of this Chapter 11 Case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, and the administration of the Plan, or the property to be distributed under the Plan, except for claims, Causes of Action, or liabilities arising from the gross negligence, willful misconduct, or fraud, in each case such conduct being subject to determination of the same by Final Order of a court of competent jurisdiction.

Section 14.03 *Release and Exculpation of the Trustee.* On the Effective Date, the Trustee shall be released from any further duties and responsibilities in this Chapter 11 case and under the Bankruptcy Code, except that he shall continue to be bound by any obligations arising under

24

confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims. Further, from and after the Effective Date, the Trustee shall not have or incur any liability for, and shall be released from, any claim, Cause of Action or liability to any Holder or any other party in interest, for any act or omission that occurred during and in connection with this Chapter 11 Case or in connection with the preparation and Filing of this Chapter 11 Case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, and the administration of the Plan, or the property to be distributed under the Plan, except for claims, Causes of Action, or liabilities arising from the gross negligence, willful misconduct, or fraud, in each case such conduct being subject to determination of the same by Final Order of a court of competent jurisdiction.

Section 14.04 *Amendment or Modification of this Plan*.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, alterations, amendments, or modifications of this Plan or Exhibits thereto may be proposed in writing by the Debtor and the Committee, jointly, at any time prior to Confirmation Date, or by the Debtor at any time after Confirmation, but, in any event, prior to the substantial consummation of this Plan.  A Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

Section 14.05 *Revocation, Withdrawal or Non-Consummation*.   The Debtor and the Committee reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans, either jointly or respectively.  If the Debtor and the Committee revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

Section 14.06 *Effectuating Documents and Further Transactions*.  The Trustee and/or Liquidating Trustee is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan.

Section 14.07 *Severability of Plan Provisions*.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding,

alteration or interpretation, but subject to Section 14.04 of this Plan, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 14.08 *Successors and Assigns*. This Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

Section 14.09 *Notice*. All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed, addressed as follows:

To the Liquidating Trustee

> Edwin H. Caldie
> **STINSON LLP**
> 50 South Sixth Street, Suite 2600
> Minneapolis, MN 55402
> Phone: (612) 335-1500
> Email: edwin.caldie@stinson.com

With a copy to the Liquidating Trustee's Legal Counsel:

> Andrew J. Glasnovich
> Kevin P. Kitchen
> **STINSON LLP**
> 50 South Sixth Street, Suite 2600
> Minneapolis, MN 55402
> Phone: (612) 335-1500
> Email: drew.glasnovich@stinson.com
>          kevin.kitchen@stinson.com

And, prior to Confirmation, a copy to the Committee's Legal Counsel:

> Jeffrey D. Klobucar
> Patrick D. Newman
> **BASSFORD REMELE, P.A.**
> 100 South Fifth Street, Suite 1500
> Minneapolis, MN 55402
> Telephone: (612) 333-3000
> Email: jklobucar@bassford.com
>          pnewman@bassford.com

Section 14.10 *Governing Law*. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan and any agreements, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of Minnesota, without giving effect to the principles of conflicts of law of such jurisdiction.

Section 14.11 *Tax Reporting and Compliance*. The Debtor and the Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all payments and distributions hereunder shall be made subject to such withholding and reporting requirements. All persons or entities holding and reporting Claims or Interests shall be required to provide any information necessary to effect the withholding of such taxes or establish a valid exemption.

Section 14.12 *Filing of Additional Documents*. On or before substantial consummation of this Plan, the Debtor shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Section 14.13 *No Waiver or Estoppel*. Each Claim Holder or Interest Holder shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor and/or its counsel, the Committee and/or its counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement or other Filings.

The Debtor and the Committee hereby request Confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

[SIGNATURE PAGES FOLLOW]

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated:  May 10, 2022

Name:  Juan R. Mostek

Its:      Chair


**CHAPTER 11 TRUSTEE FOR DEBTOR TIGER OAK MEDIA, INCORPORATED**

Dated:  May 10, 2022


Name:  Edwin H. Caldie

Its: Chapter 11 Trustee

Dated: May 10, 2022

By:  */s/ Andrew J. Glasnovich*                                                 By:  */e/ Jeffrey D. Klobucar*

Andrew J. Glasnovich (#0398366)                                Jeffery D. Klobucar (#0389368)

Kevin P. Kitchen (#0399297)                                    Patrick D. Newman (#0395864)

**STINSON LLP**                                                         **BASSFORD REMELE, P.A.**

50 South Sixth Street, Suite 2600                              100 South Fifth Street, Suite 1500

Minneapolis, MN 55402                                      Minneapolis, MN 55402

Phone: (612) 335-1500                                       Telephone: (612) 333-3000

Email:                                                          Email: jkobucar@bassford.com

drew.glasnovich@stinson.com                              pnewman@bassford.com

Email:

kevin.kitchen@stinson.com                               ***Counsel for the Official Committee of***
                                                          ***Unsecured Creditors of Tiger Oak Media,***

***Attorneys for Edwin H. Caldie,***                        ***Inc.***

***Chapter 11 Trustee***

EXHIBIT 1

CORE/3522142.0002/172173455.10

# TIGER OAK MEDIA, INCORPORATED
# LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT (this "**Liquidating Trust Agreement**") is entered into as of _____, 2022, by Edwin H. Caldie, as the chapter 11 trustee (the "**Chapter 11 Trustee**") for Tiger Oak Media, Incorporated (the "**Debtor**") and Edwin H. Caldie, not in his individual capacity, but solely in his capacity as the Liquidating Trustee for the Debtor (the "**Liquidating Trustee**"). Capitalized terms used but not otherwise defined in this Liquidating Trust Agreement shall have the meanings ascribed to those terms in the Debtor's Joint Plan of Liquidation (the "**Plan**") or Confirmation Order, as applicable.

## RECITALS

WHEREAS, on October 7, 2019 (the "Petition Date"), the Debtor filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), with the U.S. Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court");

WHEREAS, the Debtors and the Committee filed the Plan with the Bankruptcy Court, as may be amended or supplemented from time to time, and a Disclosure Statement with Respect to the Plan;

WHEREAS, pursuant to the Plan, the Estate is required to create the Liquidating Trust and to transfer the Liquidating Trust Assets to the Liquidating Trust, which the Liquidating Trust will hold in trust for the Beneficiaries pursuant to the terms of the Plan and this Liquidating Trust Agreement;

WHEREAS, the Liquidating Trust is established for the sole purpose of liquidating the Liquidating Trust Assets for the Beneficiaries and for the other limited purposes set forth in the Plan, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust and the Plan;

WHEREAS, the Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Liquidating Trustee shall operate and maintain the Liquidating Trust in compliance with the guidelines for liquidating trusts as set forth in the applicable provisions of IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the IRS, U.S. Treasury Department and other applicable legislative, administrative, regulatory and judicial agencies and departments;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein, the parties agree as follows:

1

# ARTICLE I

## DEFINITIONS

**1.1     Definitions**. The terms defined in this section are specific to this Liquidating Trust Agreement and are not otherwise defined in the Plan. For the purposes of this Liquidating Trust Agreement, the following terms (which appear in this Liquidating Trust Agreement with initial capitalized letters) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context requires otherwise.

"**Administrative Fund**" has the meaning ascribed thereto in Section 6.1.

"**Beneficiaries**" means the Holders of Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims.

"**Claims Resolution Process**" means the review, approval, or objection to a Claim, including litigation, that results in an Allowed Claim or a Claim that is not an Allowed Claim.

"**Disputed Claim Reserve**" has the meaning ascribed thereto in Section 6.5(e) of this Liquidating Trust Agreement.

"**Distributable Cash**" means Cash available for distribution to a Class or Classes in accordance with this Liquidating Trust Agreement and the Plan; provided, however, that amounts in the Disputed Claims Reserve and the Administrative Fund shall not constitute Distributable Cash and shall only be used and disbursed as specifically provided in this Liquidating Trust Agreement or in the Plan.

"**Eligible Institution**" means a depository institution: (a) that is organized under the laws of the United States of America or any one of its states or the District of Columbia; and (b) that holds deposits insured by the Federal Deposit Insurance Corporation.

"**Final Distribution Date**" means the last date on which Distributable Cash is distributed pursuant to this Liquidating Trust Agreement and the Plan.

"**Insider**" shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

"**Liquidating Trust Assets**" means all Property vested in the Liquidating Trust pursuant to the Plan.

"**Liquidating Trust Estate**" means (i) the Liquidating Trust Assets, and (ii) any and all dividends, rents, royalties, income, proceeds, and other receipts of, from, or attributable to the foregoing for the benefit of the Beneficiaries.

"**Liquidating Trust Fund Accounts**" means those interest-bearing accounts to be established by the Liquidating Trustee pursuant to Section 6.1 of this Liquidating Trust Agreement,

including without limitation, the Liquidating Trust Distribution Accounts, the Administrative Fund, and the Disputed Claims Reserve.

"**Liquidating Trust Distribution Accounts**" means those trust accounts to be established by the Liquidating Trustee pursuant to Section 5.01(b) of this Liquidating Trust Agreement for purposes of effecting Distributions to Holders of Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims.

"**Liquidating Trust Office**" means 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402.

"**Liquidating Trust Professional Fees**" means the fees and reimbursement for expenses owed to attorneys, accountants, or other professional persons retained by the Liquidating Trustee for all services to be rendered under this Liquidating Trust Agreement and otherwise.

"**Net Proceeds**" means those funds remaining in the Liquidating Trust Fund Accounts after payment of Liquidating Trust Professional Fees and other expenses of the Liquidating Trustee, including compensation owed to the Liquidating Trustee.

"**Register**" has the meaning ascribed thereto in Section 4.2 of this Liquidating Trust Agreement.

"**Rule 2004 Examinations**" means examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

"**Treasury Regulations**" mean U.S. Treasury Department regulations promulgated under the Internal Revenue Code of 1986, as amended.

**1.2    Rules of Construction**. Except as otherwise expressly provided in this Liquidating Trust Agreement or unless the context otherwise clearly requires:

(a) References to designated articles, sections, and other subdivisions of this Liquidating Trust Agreement refer to the designated article, section, or other subdivision of this Liquidating Trust Agreement as a whole and to all subdivisions of the designated article, section, or other subdivision. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Liquidating Trust Agreement as a whole and not to any particular article, section, or other subdivision of this Liquidating Trust Agreement.

(b) Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements, or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the date of this Liquidating Trust Agreement.

(c) Unless a provision is restricted as to time or limited as to frequency, all provisions under this Liquidating Trust Agreement are implicitly available from time to time.

(d) All accounting terms used in an accounting context and not otherwise defined shall be construed in accordance with generally accepted accounting principles.

(e) In the computation of a period of time from a specified date to a later specified date or an open-ended period, the word "from" means "from and including" and the words "to" or "until" mean "to but excluding." Likewise, in setting deadlines or other periods, "by" means "on or before," and "after" means "from and after."

All terms defined in this Liquidating Trust Agreement shall have the defined meanings when used in any document made or delivered pursuant hereto unless otherwise defined therein.

## ARTICLE II

### TRANSFER TO TRUST

**2.1    Transfer to Trust**. The Debtor transfers and assigns to the Liquidating Trust, and the Liquidating Trust hereby accepts, all of the Debtor's rights, title, and interest in and to all of the Company's assets, properties, rights, and claims (the "**Assets**") and all proceeds and income from investment and reinvestment in respect thereof (together with the Assets, the "**Trust Property**").

**2.2    Intention of Parties**. It is the intention of the parties that the Liquidating Trustee shall acquire title to the Assets so that the liquidation and dissolution of the Debtor shall proceed immediately. The Assets are transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall hold and deal with the Assets, in trust, for the sole benefit of the Beneficiaries (as hereinafter defined), on the terms and conditions herein set forth.

## ARTICLE III

### ORGANIZATION

**3.1    Name**. This Liquidating Trust shall be known as the "**Tiger Oak Media Liquidating Trust**," in which name the Liquidating Trustee may conduct the affairs of the Liquidating Trust.

**3.2    Office**. The office of the Liquidating Trust shall be in care of the Liquidating Trustee at the Liquidating Trust Office or at any other address that the Liquidating Trustee may designate.

**3.3    Declaration of Liquidating Trust.** The Plan provides that upon the Effective Date, the Liquidating Trustee shall have all the rights, powers and duties set forth herein, in the Plan and pursuant to applicable law for accomplishing the purposes of the Liquidating Trust. The Liquidating Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the Liquidating Trust.

**3.4    Appointment of Liquidating Trustee.** The Liquidating Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Liquidating Trustee on the Effective Date; provided, however, that the party appointed as the Liquidating

Trustee shall be permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Confirmation Date (or such earlier date as authorized by the Committee) through the Effective Date and shall be entitled to seek and receive compensation in accordance with the terms of this Liquidating Trust Agreement and the Plan.

**3.5** **Acceptance of Liquidating Trust**. The Liquidating Trustee accepts the Liquidating Trust Assets and agrees to hold and administer the Liquidating Trust Assets for the benefit of the Beneficiaries, subject to the terms and conditions of this Liquidating Trust Agreement and the Plan.

**3.6** **Tax Treatment of Liquidating Trust.** For federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust pursuant to and in accordance with the Plan shall be considered a disposition of the Liquidating Trust Assets, the proceeds of which are paid directly to and for the benefit of the Beneficiaries. It is intended that the Liquidating Trust qualify as a "grantor trust" for federal income tax purposes, and the Liquidating Trustee shall operate and maintain the trust in compliance with the guidelines for liquidating trusts as set forth in IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the IRS.

**3.7** **Conveyance of Liquidating Trust Assets**. The Debtor hereby irrevocably assigns, effective on the Effective Date, the Liquidating Trust Assets to the Liquidating Trust free and clear of all Liens, Claims, and interests of any Person.

**3.8** **Nature and Purpose of the Liquidating Trust.**

a. <u>Purpose.</u> The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes. The Liquidating Trust shall not be deemed to be the same legal entity as any of the Debtor, but only the assignee of the Liquidating Trust Assets and certain liabilities of the Debtor, and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code. Neither the Liquidating Trust nor any portion thereof, nor any reserve, account or fund established by this Plan shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(1).

b. <u>Manner of Acting.</u> The Liquidating Trustee, subject to the rights of the Beneficiaries, as provided under the Plan, shall oversee the administration and liquidation of the Liquidating Trust Assets in a cost-effective manner in a reasonable time subject to the limitations contained in this Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall make continuing efforts to make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all Avoidance Actions which constitute Liquidating Trust Assets, or otherwise subject to the terms of the Plan and distributions to Holders of Allowed Claims under the Plan. Notwithstanding anything to the contrary contained herein, the Liquidating Trust shall not be permitted to retain cash or cash

equivalents (including listed stocks or other securities) in excess of a reasonable amount to: (i) meet all distributions, Claims, and contingent liabilities, (ii) establish such Liquidating Trust Fund Accounts for payment of expenses as provided in Article VI of this Liquidating Trust Agreement and in the Plan, and (iii) preserve the liquidation value of the Liquidating Trust Assets during the term of the Liquidating Trust.

   c. <u>Relationship.</u> This Liquidating Trust Agreement is intended to create a trust relationship and to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Liquidating Trustee or the Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Liquidating Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Liquidating Trust Agreement and the Plan.

  **3.9** **Status of Liquidating Trustee.** With respect to all Liquidating Trust Assets, the Liquidating Trustee shall directly and indirectly be the representative of the Estate, as that term is used in Section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the rights and powers as a party-in-interest with respect to all matters granted to the Liquidating Trustee by this Liquidating Trust Agreement.

  **3.10** **Creation of Trust Advisory Board**. Prior to the Effective Date of the Plan, the Committee shall designate at least (3) and no more than (5) members of a "**Trust Advisory Board**" for the Liquidating Trust. The initial members of the Trust Advisory Board shall be selected from the Holders of Class 3 Claims, or those Holders' respective representatives.

  **3.11** **Powers of the Trust Advisory Board**. The Trust Advisory Board shall have the powers conferred on it by specific provisions of this Trust Agreement. In addition, the Trust Advisory Board may advise and confer with the Liquidating Trustee as to the operations of the Liquidating Trust and make recommendations related to any of the Liquidating Trustee's powers or duties under this Trust Agreement.

  **3.12** **Decisions of the Trust Advisory Board**. The Trust Advisory Board shall establish by-laws to govern its members' participation on and the procedural matters of the board. When this Trust Agreement requires the consent of the Trust Advisory Board, it shall be sufficient that half of the members, plus one, who are present and voting at the meeting, consent to the proposed action of the Liquidating Trustee.

  **3.13** **Membership on the Trust Advisory Board**. The initial members of the Trust Advisory Board may elect additional members to the Trust Advisory Board, provided however, that the membership not exceed 5 members, and the Trust Advisory Board may replace a member who resigns or is otherwise unable to serve. The Trust Advisory Board shall, with a vote of 2/3 of non-interested members remove a member of the Trust Advisory Board for any reason permitted by the by-laws.

**3.14    Compensation of the Trust Advisory Board.** The Trust Advisory Board members shall not receive or be entitled to compensation from the Liquidating Trust or its assets.

## ARTICLE IV

## BENEFICIARIES

**4.1    Rights of Beneficiaries.** Each Beneficiary shall be entitled to participate in the rights due to a Beneficiary hereunder. Each Beneficiary shall have an interest subject to all of the terms and provisions of this Liquidating Trust Agreement and the Plan. The interest of a Beneficiary of the Liquidating Trust is in all respects personal property, and upon the death, insolvency, or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency, or incapacity shall not terminate or affect the validity of this Liquidating Trust Agreement. A Beneficiary shall have no title to, right to, possession of, management of, or control of, the Liquidating Trust Assets, except as herein expressly provided. No surviving spouse, heir, or devisee of any deceased Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Liquidating Trust Assets, but the whole title to all the Liquidating Trust Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Liquidating Trust Agreement and the Plan.

**4.2    Limit on Transfer of Interests of Beneficiaries.** The interest of a Beneficiary in the Liquidating Trust shall not be transferable except (i) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Beneficiary), or (ii) as set forth in the Plan and/or this Liquidating Trust Agreement. The Liquidating Trustee shall maintain a register (the "**Register**"), which may be the claims docket filed with the Bankruptcy Court or a distribution matrix, to record the beneficial interests of the Beneficiaries. The Register shall be kept at the Liquidating Trust Office.

**4.3    No Legal Title in Beneficiaries**. No Beneficiary shall have legal title to any part of the Liquidating Trust Assets. No transfer by operation of law or otherwise, of the right, title, or interest of any Beneficiary in and to the Liquidating Trust Assets or hereunder shall operate to terminate this Liquidating Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Liquidating Trust Assets. No successor of the Holder of a Claim or the transferee of any Claim shall have any rights as a beneficiary superior to the rights of the initial Holder.

## ARTICLE V

## THE LIQUIDATING TRUSTEE

**5.1    Appointment and Tenure of Liquidating Trustee.** Edwin H. Caldie shall be the Liquidating Trustee until his resignation, death, or removal, or the termination of the Liquidating Trust.

**5.2     Authority/Duties**. Subject to any limitations contained in, or as otherwise provided by this Liquidating Trust Agreement or in the Plan or the Confirmation Order, the Liquidating Trustee shall have the following powers and authorities, by way of illustration and not of limitation:

      **a.**     to serve as the Disbursing Agent under the Plan for the purpose of making Cash Distributions to Holders of Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed General Unsecured Claims in accordance with the terms of the Plan and Confirmation Order.

      **b.**     to collect, receive, hold, manage, invest, or distribute any and all money and other property which are Liquidating Trust Assets; provided, however, that the Liquidating Trustee may only invest Cash of the Liquidating Trust in Eligible Investments;

      **c.**     subject to the terms of the Plan, the Confirmation Order, and this Liquidating Trust Agreement, to retain and set aside funds out of the Liquidating Trust Assets and deposit such funds in the Liquidating Trust Distribution Accounts and such other accounts as may be necessary or appropriate to fulfill the Liquidating Trustee's role as Disbursing Agent, including, but not limited to, the Disputed Claims Reserve and the Administrative Fund.

      **d.**     to do or perform any acts or things necessary or appropriate for the conservation and protection of the Liquidating Trust Assets;

      **e.**     to employ agents and professionals and to confer upon them such authority as the Liquidating Trustee may deem necessary or appropriate;

      **f.**     to hold legal title to any and all rights of the Beneficiaries in or arising from the sale of any Trust Property, and to receive and collect any and all payments due in connection with any such sales;

      **g.**     to receive, hold, maintain, grant, sell, exchange, convey, release, assign, or otherwise transfer legal title to any Trust Property;

      **h.**     to enter into contracts and agreements with respect to the Trust Property and related matters;

      **i.**     to execute and deliver, upon proper payment, partial and complete releases of any third party obligations transferred to the Liquidating Trust;

      **j.**     to protect and enforce the rights vested in the Liquidating Trustee to the Trust Property by this Liquidating Trust Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings;

      **k.**     to take any steps necessary to establish clear title to any Trust Property;

      **l.**     to employ legal counsel, accountants, advisors, custodians, and/or other agents in connection with the administration or termination of this Liquidating Trust, to delegate to them any powers of the Liquidating Trustee, and to pay out of the Trust Property to such legal

counsel, accountants, advisors, custodians, and/or other agents reasonable compensation for services rendered;

       **m.**    to select a fiscal year for the Liquidating Trust;

       **n.**    subject to the consent of the Trust Advisory Board, to compromise, adjust, arbitrate, sue on or defend, abandon or otherwise deal with and settle claims in favor of or against this Liquidating Trust; and

       **o.**    to take any and all other actions which are necessary or desirable for the orderly liquidation of the Liquidating Trust Assets and the distribution of the proceeds resulting therefrom to the Beneficiaries.

       **p.**    to file any and all documents and take any and all such other action as the Liquidating Trustee, in his sole judgment, may deem necessary in order that the Liquidating Trustee may lawfully carry out the purposes of the Liquidating Trust in any jurisdiction;

       **q.**    after consulting with the Trust Advisory Board, to review any Avoidance Actions constituting Liquidating Trust Assets and file or litigate such Avoidance Actions in accordance with the Plan, the Confirmation Order, and this Liquidating Trust Agreement;

       **r.**    to pay and discharge any costs, expenses, professional fees, or obligations deemed necessary to preserve or enhance the liquidation value of the Liquidating Trust Assets, discharge duties under the Plan and the Confirmation Order, or perform the purpose of this Liquidating Trust Agreement.

       **s.**    to open and maintain bank accounts and deposit funds, draw checks, and make disbursements in accordance with the Plan, the Confirmation Order, and this Liquidating Trust Agreement;

       **t.**    to enforce, waive, assign, or release rights, privileges, or immunities of any kind, subject to and consistent with the terms and conditions of the Plan, the Confirmation Order, and this Liquidating Trust Agreement;

       **u.**    to, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to or different from the ways herein specified, but in all events subject to and consistent with the terms of the Plan, the Confirmation Order, and this Liquidating Trust Agreement;

       **v.**    to obtain and pay for insurance coverage relative to the proper performance of the Liquidating Trustee's duties under the Plan, the Confirmation Order, and this Liquidating Trust Agreement, and to provide indemnification for himself and others provided for in this Liquidating Trust Agreement;

       **w.**    to cooperate with the Debtor in connection with the fulfillment of the Debtor's rights and obligations under the Plan.

**5.3     Compensation and Reimbursement of Liquidating Trustee and Professionals and Payment of Other Expenses.** The Liquidating Trustee shall be compensated for his services at his usual and customary hourly rate, as such rates are adjusted from time-to-time. All actual and reasonable out-of-pocket expenses incurred by the Liquidating Trustee shall be reimbursable as an expense of the Liquidating Trust. The Liquidating Trustee and the Liquidating Trust Professionals, including, but not limited to, attorneys and financial advisors, shall be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by the professional on an hourly basis, at the standard billing rates in effect at the time of service or some other rate or basis of compensation that is reasonable. All actual and reasonable out-of-pocket expenses incurred by the Liquidating Trustee pursuant to the Plan shall be reimbursable as an expense of the Liquidating Trust.

**5.4     No Implied Obligations.** No other covenants or obligations shall be implied into this Liquidating Trust Agreement. The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any document or instrument evidencing or otherwise constituting a part of the Liquidating Trust Assets.

**5.5     Unknown Property and Liabilities.** The Liquidating Trustee shall only be responsible for the property delivered to the Liquidating Trust, and he shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

<u>**ARTICLE V**</u>

**ADMINISTRATION OF THE LIQUIDATING TRUST**

**6.1     Creation of Liquidating Trust Fund Accounts.** The Liquidating Trustee, on behalf of the Beneficiaries, shall establish and maintain the following Liquidating Trust Distribution Accounts in the name of the Liquidating Trust at an Eligible Institution as segregated interest-bearing trust accounts accessible only by the Liquidating Trustee as necessary to implement the Plan: (i) the Creditor Reserve, as that term is defined in the Plan; (ii) the Disputed Claims Reserve, as that term is defined in the Plan; (iii) the Professional Fee Escrow, as that term is defined in the Plan; a (iv) "Litigation Fund", after consulting with the Trust Advisory Board, in an amount reasonably necessary to resolve any Disputed Claims or to pursue any Avoidance Actions; and (v) a "Trust Administration Fund" in an amount the Liquidating Trustee, in his sole discretion, believes necessary to effectuate his duties and responsibilities under this Trust Agreement. Any excess amount remaining in the Disputed Claims Reserve, after all Disputed Claims have been resolved, shall be distributed in accordance with Section 6.2 of this Liquidating Trust Agreement. Proceeds from the net income of the Liquidating Trust, plus all net proceeds from recoveries of Avoidance Actions, if any, in excess of amounts reasonably necessary to fund the Trust Administration Fund shall be made Pro Rata to the Creditor Reserve.

**6.2     Distribution Procedures.**

a.     <u>Timing of Distributions</u>. The Liquidating Trustee shall make distributions in accordance with the Plan. Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date or as soon thereafter

as is practicable. If the Liquidating Trustee does not designate the Effective Date as the Initial Distribution Date, the Liquidating Trustee shall establish the Initial Distribution Date in consultation and with the consent to the Trust Advisory Board. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Further, the Liquidating Trustee shall determine, in accordance with the Plan, when to make a Subsequent Distribution based on the amount of Cash currently available in the Liquidating Trust. The Liquidating Trustee shall have no obligation to make a distribution on account of an Allowed Claim or account to a specific Holder of an Allowed Claim if the amount to be distributed to that Holder on the Initial Distribution Date or Subsequent Distribution Date (i) does not constitute a final distribution to such Holder, and (ii) is less than $500.00.  In addition, the Debtor reserves the right to request subsequent relief from the Bankruptcy Court to exclude Holders of smaller Claims from the final distribution under this Plan to the extent that the amounts otherwise distributable to such Holders in connection with such final distribution would be *de minimis* or create undue administrative expense.

b.    <u>Manner of Payments</u>. Payments to be made by the Liquidating Trustee, pursuant to the Plan, the Confirmation Order, and this Liquidating Trust Agreement, shall be made by the Liquidating Trustee pursuant to the Plan.

c.    <u>Fractional Cents</u>. No payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole cent (up or down), with half cents or less being rounded down and fractions in excess of half a cent being rounded up.

d.    <u>De Minimis Interim Distribution</u>. If the amount distributable to a Creditor would be less than $500.00 in the aggregate considering the distributions from the applicable Liquidating Trust Fund Account (such distribution amount of less than $500.00, a "**De Minimis Interim Distribution**"), then the Liquidating Trustee shall not make the De Minimis Interim Distribution, but rather shall hold the De Minimis Interim Distribution in reserve until such time as the aggregate amounts distributable to the Creditor, combined, as of the next distribution, equals or exceeds $500.00, but in all events not later than the Final Distribution Date.  Notwithstanding the foregoing, the Liquidating Trustee shall not be required to make any Final Distribution of less than $500.00.

e.    <u>Undeliverable Distributions as Unclaimed Property</u>. Except with respect to property not distributed because such property is being held in a Disputed Claim Reserve, Distributions that are not claimed by the expiration of six (6) months from the date such Distribution was made, shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest in and be retained by the Liquidating Trust, and the Claims with respect to which such Distributions are to be made shall be automatically canceled and extinguished. After the expiration of the six-month period referenced in the preceding sentence, the Claim of any Person or Entity to such Distributions shall be discharged and forever barred, and such unclaimed property as well as further Distributions to that party shall be Distributed to the other Holders of Allowed Class 3 Claims on account of their Pro Rata Share of such amount. Nothing contained in this Plan shall require the Liquidating Trust to attempt to locate any Holder

of an Allowed Claim. Nothing contained in the Plan or in this Liquidating Trust Agreement shall require the Liquidating Trust to attempt to locate any Holder of an Allowed Claim.

**6.3     Interest on Distributions.** Any interest earned by the funds in the Liquidating Trust Fund Accounts, except for the Liquidating Trust Distribution Accounts, shall inure to the benefit of the Liquidating Trust generally and not specifically for any party. Interest earned by the funds in the Liquidating Trust Distribution Accounts shall inure to the benefit of the Liquidating Trust to offset expenses incurred to make Distributions to the Beneficiaries of the respective Liquidating Trust Distribution Accounts.

**6.4     Limitations on Liquidating Trustee.**

a.     The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or the Beneficiaries, (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Liquidating Trust Assets, or (ii) except as provided below, reinvest any Assets.

b.     The Liquidating Trustee shall be restricted to the holding, collection, conservation, protection, and administration of the Liquidating Trust Assets, in accordance with the provisions of this Liquidating Trust Agreement, the Plan, and the Confirmation Order, and the payment and distribution of amounts as set forth herein for the purposes set forth in this Liquidating Trust Agreement. The scope of any permissible investments shall be limited to include only Eligible Investments, within the meaning of Treasury Regulation section 301.7701- 4(d), or any such modification in the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

**6.5     Further Authorization.** The Liquidating Trustee shall be entitled to seek any orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes of, and to give full effect to, the provisions of the Plan, the Confirmation Order, and this Liquidating Trust Agreement.

**6.6     Withholding and Reporting Requirements.** In connection with the Plan, the Confirmation Order, and this Liquidating Trust Agreement and all distributions hereunder, the Liquidating Trustee shall comply with all applicable tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, the Confirmation Order, or this Liquidating Trust Agreement, each Holder of an Allowed Claim entitled to receive a distribution from the Liquidating Trust Fund Accounts shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of the distribution.

**6.7      Determination of Tax Information with Respect to Allowed Claims.** Prior to making any distribution to a Person or Entity that is a Beneficiary on account of, and/or a Holder of, an Allowed Claim pursuant to this Liquidating Trust Agreement, in the event the Liquidating Trust has not already been provided with a valid properly completed IRS Form W-9 or a valid properly completed IRS Form W-8BEN, W-8ECI, W-8EXP or W-8IMY (any successor, or otherwise applicable, form) (individually, an "**IRS Form**" and, collectively, the "**IRS Forms**"), as applicable, for the Beneficiary, the Liquidating Trustee must request that the Beneficiary provide the Liquidating Trustee with the applicable valid, properly completed IRS Form. The Liquidating Trustee need not, but may, make any distribution to such Beneficiary until the Liquidating Trustee receives from the Beneficiary a valid IRS Form that is applicable to such distribution. The Liquidating Trustee shall consult with the Debtor in order to obtain the IRS Forms, and may in good faith rely upon the information received for the purposes of satisfying the Liquidating Trustee's tax reporting obligations. The tax information shall be treated as confidential and shall only be disclosed as necessary to taxing authorities. If the Liquidating Trustee is unable to obtain a valid properly completed IRS Form after making a written request to the Beneficiary, then after the expiration of ninety (90) days from the date of transmission of such written request, the Beneficiary shall forfeit all distributions and shall thereafter be treated as if their Claim were disallowed.

**6.8      Tax Returns/Tax Matters**.

a.      The Liquidating Trustee shall file all tax returns, tax reporting, and other filings with governmental authorities on behalf of the Liquidating Trust and the Liquidating Trust Assets it holds for time periods ending on or before termination of this Liquidating Trust.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee) the Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trustee's filings shall also include requests for determination of tax under Section 505(b) of the Bankruptcy Code (to the extent applicable) and responses to any tax audits, solely with respect to the Liquidating Trust Assets. The Liquidating Trustee shall make this information available to the Beneficiaries in order to enable them to properly file their separate tax returns and withhold and pay any amounts required by any applicable tax law.

b.      The Liquidating Trustee is authorized to act as agent for the Liquidating Trust Assets in withholding or paying over any amounts required by law (including tax law) to be withheld or paid by the Liquidating Trust Assets in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust pursuant to the Plan and the Confirmation Order. The Liquidating Trustee is further entitled, but not required, to deduct any federal or applicable state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code.

c.      All net income of the Liquidating Trust and net proceeds from the disposition of the Liquidating Trust Assets shall be subject to federal and applicable state income taxation in the year such net income or net proceeds are realized, whether or not such amounts are immediately paid or distributed to the Beneficiaries or retained by the Liquidating Trustee in the

reserves necessary to meet the Disputed Claims and maintain or enhance the value of the Liquidating Trust Assets. Any net income remaining shall be distributed in accordance with applicable tax laws and tax regulations.

        d.    The Liquidating Trustee shall determine the fair market value of Liquidating Trust Assets on the Effective Date and, to the extent necessary, the determined fair market value shall be used by the Liquidating Trust, the Liquidating Trustee, and the Beneficiaries for all federal income tax purposes.

**6.9**    **Preservation of Avoidance Actions.** Without limiting the foregoing, pursuant to Bankruptcy Code Section 1123(b)(3)(B), as of the Effective Date, except for Avoidance Actions released under the Plan or transferred pursuant to the Sale, all other Avoidance Actions shall vest in the Liquidating Trust as the representative of the Debtor's Estate, and may be prosecuted under applicable law, in accordance with the terms of this Liquidating Trust Agreement.

**6.10**    **Procedure for Pursuing Avoidance Actions.** The Liquidating Trustee shall have full authority to pursue Avoidance Actions, if any, that vested in the Liquidating Trust pursuant to the Plan, including by substituting, as a manner of right, for the Debtor or the Trustee, respectfully in any pending action.

**6.11**    **Procedure for Pursuing Claims Objections.** On and after the Effective Date, the Liquidating Trustee may object to any Claims (including those Claims listed in the Debtor's Schedules, but excluding any Claims deemed Allowed under the Plan). All such objections must be filed prior to the Claims Objection Deadline or as otherwise set forth in the Plan.

**6.12**    **Claims Estimation.** The Liquidating Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); provided, however, that the Bankruptcy Court shall determine (a) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (b) the timing and procedures for such estimation proceedings, if any.

**6.13**    **Settlement of Avoidance Actions and Claims Objections.** Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, all Avoidance Actions that the Liquidating Trustee asserts against other Persons may be compromised and settled with the consent of the Trust Advisory Board.

## ARTICLE VII

## DURATION OF LIQUIDATING TRUST

**7.1**    **Duration of Liquidating Trust.** This Liquidating Trust shall terminate on the date upon which all of the Liquidating Trust Assets have been distributed to the Beneficiaries and all of the necessary tax returns have been prepared and filed; provided, however, that the Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the effective date of this Liquidating Trust Agreement, that prior to such termination date, the Liquidating Trustee may seek multiple fixed-term extensions of such termination date from the Bankruptcy Court if the extension is necessary for the liquidating purposes of the Liquidating Trust. Any such extension must be

obtained at least three (3) months before the expiration of the original term and each extended term.

**7.2    Continuance of Liquidating Trust for Winding Up.** After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act until his duties have been fully performed, provided that the Liquidating Trustee has been paid in advance from the Liquidating Trust for such services. Upon termination of the Liquidating Trust, the Liquidating Trustee shall retain, for a period of two (2) years, the books, records, Register, and certificates and other documents and files which have been delivered to or created by the Liquidating Trustee, provided that the Liquidating Trustee has been paid in advance from the Liquidating Trust for such services. At the Liquidating Trustee's discretion, all other records and documents may, but need not, be destroyed at any time after one (1) year from the completion and winding up of the affairs of the Liquidating Trust (provided that the Liquidating Trustee has been paid in advance for such services from the Liquidating Trust). Except as otherwise specifically provided herein, upon the termination of the Liquidating Trust, the Liquidating Trustee shall have no further duties or obligations hereunder.

## ARTICLE VI

## INDEMNIFICATION; LIMITATIONS ON LIABILITY

**8.1    General Indemnification.** The Liquidating Trust shall indemnify, defend, and hold harmless any Person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated investigation, action, suit, or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such Person is or was the Liquidating Trustee, or the Liquidating Trustee's respective agent, affiliate, attorney, accountant, financial advisor, professional, or employee (each such person, an "**Indemnified Person**"), from and against any and all claims, causes of action, liabilities, obligations, losses, damages, costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred or paid by such Indemnified Person in connection with such investigation, action, suit, or proceeding, or the defense or settlement of any such investigation, action, suit, proceeding, claim, issue, or matter therein, to the fullest extent permitted by applicable law, except to the extent such liability is determined to be the result of willful misconduct or gross negligence. Costs or expenses incurred by any such Indemnified Person in defending any such action, suit, or proceeding shall be paid from the Liquidating Trust in advance of the institution or final disposition of such action, suit or proceeding; provided, however, that any such Indemnified Person shall promptly reimburse the Liquidating Trust for all such costs and expenses paid by the Liquidating Trust, if it is finally adjudicated by a court of competent jurisdiction, that liability by such Indemnified Person is a result of willful misconduct or gross negligence. The Liquidating Trustee may in his discretion purchase and maintain insurance on behalf of any Indemnified Person who is or was a beneficiary of this provision.

**8.2    No Recourse.** To the extent permitted by law, and except as provided in the Plan, the Confirmation Order, or this Liquidating Trust Agreement, no recourse shall ever be had, directly or indirectly, against the Trust Advisory Board, any of the members of the Trust Advisory Board acting in such capacity, or the Liquidating Trustee personally, or against any agent, representative, affiliate, attorney, accountant, financial consultant, or other professional of the

15

Liquidating Trustee or against any agent, affiliate, representative, attorney, accountant, financial consultant, or professional of the Liquidating Trustee (collectively the "**Exculpated Parties**"), for actions taken or not taken in connection with the Liquidating Trust, by legal or equitable proceedings, or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Exculpated Parties under the Plan, the Confirmation Order, this Liquidating Trust Agreement, or by reason of the creation of any indebtedness by the Liquidating Trustee in connection with the Liquidating Trust under the Plan, the Confirmation Order, or this Liquidating Trust Agreement for any purpose authorized by the Plan, the Confirmation Order, or this Liquidating Trust Agreement, it being expressly understood and agreed that all such liabilities, covenants, and agreements shall be enforceable only against and be satisfied only out of the Liquidating Trust Assets or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the Liquidating Trust Assets.

**8.3   No Liability.** No successor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Liquidating Trustee in office prior to the date on which such Person becomes the successor Liquidating Trustee, nor shall such successor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Liquidating Trust Assets furnished to such successor Liquidating Trustee by the predecessor Liquidating Trustee and shall further be responsible only for those Liquidating Trust Assets included in such statement. No predecessor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions of any successor Liquidating Trustee, nor shall such predecessor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

**9.1   Notices.** All notices, requests, or other communications to the Liquidating Trustee hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail, or facsimile communication, (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by a national commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers: With a copy to the Liquidating Trustee:

> Edwin H. Caldie
> **STINSON LLP**
> 50 South Sixth Street, Suite 2600
> Minneapolis, MN 55402
> Phone: (612) 335-1500
> Email: edwin.caldie@stinson.com

With a copy to the Liquidating Trustee's Legal Counsel:

Andrew J. Glasnovich
Kevin P. Kitchen
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Phone: (612) 335-1500
Email: drew.glasnovitch@stinson.com
Email: kevin.kitchen@stinson.com

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of transmission of the communication; and (iii) if by mail, on the date of receipt. Any party from time to time may change its address, facsimile number or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

**9.2    Effectiveness.** This Liquidating Trust Agreement shall become effective upon the Effective Date.

**9.3    Counterparts.** This Liquidating Trust Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

**9.4    Governing Law.** Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Liquidating Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Minnesota.

**9.5    Severability of Provisions.** Any provision of this Liquidating Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition without invalidating the remaining provisions of this Liquidating Trust Agreement or affecting the validity or enforceability of any of the terms or provisions of this Liquidating Trust Agreement in any other jurisdiction.

**9.6    Entire Agreement.** This Liquidating Trust Agreement (including the Recitals) constitutes the entire agreement between and among the parties hereto and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Liquidating Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, nothing in this Liquidating Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Liquidating Trust Agreement.

**9.7    Effect of Death, Incapacity or Bankruptcy of Beneficiary.** The death, incapacity or bankruptcy of a Beneficiary during the terms of this Liquidating Trust Agreement shall not operate to terminate the Liquidating Trust Agreement, nor shall it entitle the representatives or creditors of the deceased Beneficiary to an accounting, or to take any action in the courts or

elsewhere for the distribution of the Liquidating Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any Beneficiary.

**9.8     No Waiver.** No failure or delay of any party to exercise any right or remedy pursuant to this Liquidating Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**9.9     Relationship Created.** The only relationship created by this Liquidating Trust Agreement is the relationship between the Liquidating Trustee and the Beneficiaries. No other relationship or liability is created. Nothing contained in this Liquidating Trust Agreement shall be construed so as to construe the Beneficiaries or their successors-in-interest as creating an association, partnership, or joint venture of any kind.

**9.10    Confidentiality** The Liquidating Trustee shall, during the period that he serves as Liquidating Trustee under this Liquidating Trust Agreement and for a period of twelve (12) months following the earlier of the termination of this Liquidating Trust Agreement or his removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which it has become aware in its capacity as Liquidating Trustee.

**9.11    Joint Litigation Privilege.** All communications, except for matters pertaining to the compensation of the Liquidating Trustee, whether in writing or oral, among, and all documents exchanged among, the Liquidation Trustee, and his agents and representatives, on the one hand, and the Trust Advisory Board, and its agents and representatives, on the other hand, shall for all purposes deemed to be, and treated as, privileged communications, not subject to discovery, disclosure, or process seeking same, based upon their common interests, joint litigation privileges, and joint attorney-work product protections, of the Liquidating Trustee and the Trust Advisory Board with respect to all matters pertaining to the Plan and this Agreement.

**9.12    Amendment of Liquidating Trust Agreement.** This Liquidating Trust Agreement may be amended from time to time upon the written consent of those Beneficiaries holding 50% of the Face Value of any unpaid Allowed Claims, the Liquidating Trustee, and the Trust Advisory Board; provided, however, that no amendment shall be made to this Liquidating Trust Agreement that makes it inconsistent with the provisions of the Plan or the Confirmation Order.

**9.13    Retention of Jurisdiction by the Bankruptcy Court.** As provided in the Plan and the Confirmation Order, the Bankruptcy Court shall retain jurisdiction to adjudicate the Avoidance Actions, if any, the Claims Resolution Process, any issue or dispute arising under this Liquidating Trust Agreement, and any other matter that relates to the implementation of the terms and conditions of the Plan and the Confirmation Order. The Liquidating Trustee shall have standing in any such proceeding to enforce the rights of the Liquidating Trust or of the Beneficiaries arising under this Liquidating Trust Agreement or the Plan.  The Trust Advisory Board shall also have standing in any such proceeding to enforce the rights of the Beneficiaries arising under this Liquidating Trust Agreement or the Plan. Any and all claims and disputes, if any, asserted against the Liquidating Trustee are subject to the exclusive jurisdiction of the Bankruptcy Court.

**9.14    Liquidating Reports.** Within 90 days after making a Final Distribution, the Liquidating Trustee shall complete a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the Plan, including the status of the liquidation of the Liquidating Trust Assets, objections to Claims, prosecution of Avoidance Actions, retention of professionals, and other matters concerning the Liquidating Trust. Such reports shall be distributed to those parties requesting special notice in the Debtors' cases and to any party in interest that makes a written request therefor to the Liquidating Trustee. The report shall include a statement of receipts and disbursements, with the ending cash balance. The report shall also include information sufficiently comprehensive to enable the Bankruptcy Court to determine whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid; and whether all motions, contested matters, and adversary proceedings have been finally resolved.

**9.15    Post-Confirmation United States Trustee Quarterly Fees.** A quarterly fee shall be paid by the Liquidating Trust to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6).

**9.16    Conflicts with Plan.** In the event any provision of this Liquidating Trust Agreement conflicts with any provisions of the Plan, the provisions of the Plan shall govern.

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement as of the date first above written.

TIGER OAK MEDIA, INCORPORATED

/s/
Edwin H. Caldie
Chapter 11 Trustee

LIQUIDATING TRUSTEE

/s/
Edwin H. Caldie
Liquidating Trustee